Merrimack
No. 88-381

GREEN MOUNTAIN INSURANCE COMPANY

v.

ORVIS W. BONNEY, JR.

July 13, 1989

*Wiggin & Nourie*, of Manchester (*Gordon A. Rehnborg, Jr.*, and *Doreen F. Connor* on the brief, and *Ms. Connor* orally), for the plaintiff.

*Raymond J. Kelly*, of Manchester, by brief and orally, for the defendant.

*Nixon, Hall & Hess*, of Manchester (*Francis G. Murphy, Jr.*, on the brief), by brief for David, Norman, and Jarrod Limbert, as *amici curiae*.

BATCHELDER, J. This case presents an appeal of a summary judgment order recommended by a Master (*Frank B. Clancy, Jr.,* Esq.) and approved by the Superior Court (*Manias,* J.). The order granted plaintiff Green Mountain Insurance Company's motion for summary judgment against defendant, Orvis W. Bonney, Jr., in a declaratory judgment action brought to determine whether or not Bonney should be allowed to stack uninsured/underinsured motorists coverage in this case. For the reasons that follow, we reverse and remand for proceedings consistent with this opinion.

On June 5, 1986, the defendant, Bonney, was seriously injured in an automobile accident involving his automobile and an automobile operated by Raymond Rice. At the time of the accident Bonney was insured under a policy issued by Green Mountain Insurance Company (Green Mountain) which provided uninsured/ underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence for three vehicles.

With Green Mountain's permission, Bonney settled with Rice for $50,000, the limit of Rice's liability coverage. However, Bonney claimed that Rice's policy limits were inadequate to compensate him for the injuries he sustained in the accident and filed a claim with Green Mountain for uninsured/underinsured motorist coverage. A dispute arose as to the amount of underinsured motorists coverage available to Bonney under the Green Mountain policy. Bonney asserted that, since he was operating one of the three vehicles insured under the policy, he was entitled to stack the uninsured motorist coverage, obligating Green Mountain to provide him coverage in the amount of $300,000 per person and, subject to the per person limitation, $900,000 per occurrence.

As a result of this dispute Green Mountain filed a declaratory judgment action to determine the amount of uninsured motorist coverage available to Bonney. The company took the position that the maximum amount available under the policy would be $100,000 per person and, subject to the per person limitation, $300,000 per occurrence, less credits for any contributions from tortfeasors. It argued that policy Endorsement #191, which was in effect prior to the accident date, clearly and unambiguously prohibited stacking. Endorsement #191 provided in pertinent part:

"This endorsement modifies such insurance as is afforded by the provision of the policy relating to . . .
COVERAGE J—UNINSURED MOTORISTS
IT IS AGREED THAT:

The limits of liability shown in the Declarations are our maximum limits of liability for all damages in any one accident or occurrence. This is the most we will pay regardless of the number of persons insured, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident or occurrence."

On May 9, 1988, Green Mountain moved for summary judgment on the declaratory judgment action. In support of its motion, Green Mountain submitted affidavits from the office manager of the insurance agency where Bonney purchased the policy, stating that his agency mailed the original declaration sheet and a revised copy of the policy text including Endorsement #191 to Bonney on August 28, 1984. Green Mountain also attached a copy of the policy jacket including Endorsement #191 provided to it by Bonney's attorney by letter dated August 18, 1987, as the "actual policy jacket that [his] client had at the time of the accident."

In response, Bonney argued that summary judgment was inappropriate because a material issue of fact existed as to what policy documents, if any, Green Mountain provided Bonney prior to the accident date. The Bonneys presented affidavits in support of their position, which stated that they customarily purchased monthly automobile insurance coverage from the Whittemore Insurance Agency for which they received only declarations pages and that they did not recall ever having received a policy pamphlet prior to the accident. Orvis Bonney's affidavit also stated that he had never received a copy of the full policy text, including Endorsement #191, until after the accident, when he went to the agency in December 1986 and asked for a copy of the full policy. The copy he received at that time was the one he subsequently gave to his attorney. Mr. Bonney also stated that, when he asked employees at the insurance agency why he had never received a copy of the policy, he was told that it was not their usual practice to send a copy of the full policy text to monthly customers.

The master recommended, and the court found, that summary judgment should be awarded in favor of Green Mountain limiting stacking as provided in Endorsement #191, and that no genuine issue of material fact was raised by Bonney's argument that he did not receive notice of the existence of Endorsement #191 until after the accident. This appeal ensued.

On appeal Bonney argues that summary judgment was improper in this case because a material issue of fact exists as to whether or not he ever received a copy of the insurance policy containing Endorsement #191. He contends that receipt of the policy text is

material in this case because Endorsement #191 cannot be applied as an effective limitation of the insurer's liability for stacking under the insurance contract if it was never mutually agreed to by the contracting parties. He claims that if the issues of notice and receipt of the policy text are resolved in his favor, they would effectively preclude the application of Endorsement #191.

The defendant also contends that, since the monthly declarations sheets and bills contained all the essential elements of the insurance contract to which the parties agreed, the insurer cannot make basic changes in that coverage without providing him detailed notice of them, and there is no principled basis upon which to impute knowledge of Endorsement #191 to him when he was never sent a copy of the policy text containing it.

Green Mountain argues that delivery of the policy text was not material to the disposition of the case and that summary judgment was therefore appropriate because (1) Bonney accepted the policy; (2) Green Mountain made no changes or modifications to the 1984 contract originally accepted by Bonney; (3) Bonney's acceptance of the contract presumes knowledge of its terms; and (4) Endorsement #191 is not ambiguous.

Summary judgment is a procedure designed to save time, effort, and expense and to streamline the administration of justice by avoiding the formal trial of cases where there is no genuine issue of material fact. *Community Oil Co. v. Welch*, 105 N.H. 320, 321–22, 199 A.2d 107, 108–09 (1964). "However, its purpose should not be, and is not, to deny litigants a right of trial if they really have material issues to litigate." *Id.* at 322, 199 A.2d at 109. In order for a moving party to prevail on a motion for summary judgment, the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III. It is well settled that, in ruling upon a motion for summary judgment, the court must consider the evidence in the light most favorable to the party opposing the motion. *See ERA Pat Demarais Assoc's v. Alex. Eastman Found.*, 129 N.H. 89, 92, 523 A.2d 74, 76 (1986); *McElroy v. Gaffney*, 123 N.H. 58, 60, 457 A.2d 429, 430 (1983).

If we consider the evidence presented by the affidavits here in the light most favorable to Bonney, we find that there is a genuine issue of material fact as to whether or not the full policy text, including Endorsement #191, was part of the insurance contract in effect between Green Mountain and Bonney at the time of the accident. The record discloses evidence that Bonney contracted for

uninsured motorists coverage in the amount of $100,000 per person and $300,000 per occurrence for three automobiles, paid monthly premiums for that coverage and received monthly declarations pages outlining that contractual agreement. The record contains conflicting evidence as to whether or not Green Mountain ever sent or Bonney ever received a copy of the full Green Mountain liability policy text, including Endorsement #191 which purports to limit Green Mountain's liability for the stacking of uninsured motorists coverage. Considered in the light most favorable to Bonney, the evidence could support the conclusion that Bonney was never informed about or given a copy of the full policy text containing the restrictive endorsement.

Green Mountain would have us rule that Bonney should be subject to the terms of the restrictive endorsement because it was printed on an attachment to a policy text maintained in Green Mountain's office. In support of this contention, Green Mountain argues first that delivery of the policy text is not material because Bonney accepted the full policy text, including Endorsement #191, by paying monthly premiums. Green Mountain suggests that, in order to conclude that Endorsement #191 does not apply, we must either (1) revise or rewrite the policy to exclude Endorsement #191, or (2) determine that there is *no* coverage because delivery of the policy text was a condition precedent to the formation of an insurance contract. However, we need not do either.

It is clear from the course of conduct between the parties in this case that Bonney entered into a contract for insurance coverage with Green Mountain for which he paid monthly premiums. As Green Mountain points out in its brief, the delivery of a copy of the full insurance policy text is not a condition precedent to a valid insurance contract. *See Gerrish v. Insurance Co.*, 55 N.H. 355, 358 (1875). Even oral contracts for insurance are enforceable so long as "there is agreement upon the subject-matter, the parties, the risk insured, the amount, the time for the coverage to begin to run, the duration of the coverage, and the premium." *Elliott v. Insurance Co.*, 92 N.H. 505, 510, 33 A.2d 562, 567 (1943). The written declarations sheet used in this instance provides a written record of each of these elements. By characterizing the delivery issue as either a contract formation or reformation issue and ignoring the substance of Bonney's arguments, Green Mountain fails to address the underlying question in this case—was the full policy text including restrictive Endorsement #191 part of the insurance contract agreed to and paid for by Bonney?

In this State, RSA 264:15, I, requires that all motor vehicle liability insurance policies provide insureds who purchase the insurance with uninsured motorists coverage equal to the liability coverage. Intra-policy stacking of uninsured motorist coverage, which allows the insured to aggregate the limits of coverage by multiplying the stated limit of liability by the number of vehicles covered under a policy, is generally allowed. *Cacavas v. Maine Bonding and Casualty Co.*, 128 N.H. 204, 205–07, 512 A.2d 423, 423–25 (1986). Insurance companies are, however, free to limit their liability and prevent stacking through the use of clear and unambiguous policy language contained in the policy agreed to. *Id.* at 208, 512 A.2d at 425. In order to clearly and unambiguously incorporate a limitation of liability for stacking into an insurance contract, an insurer must in some manner inform the insured of the restrictive policy language.

In this case a factual determination must be made as to whether or not Endorsement #191 was part of the insurance contract mutually agreed to by the parties before a decision can be made as to whether or not Endorsement #191 was an effective limitation of the normal stacking requirements. Since we have determined that a contract was formed in this case, it is axiomatic that if Endorsement #191 was not part of that contract, its terms are irrelevant to this case and the court must allow stacking.

Each of Green Mountain's three remaining arguments also fails because it assumes the material fact, as yet unproven, that Bonney accepted the 1984 contract containing Endorsement #191. Unlike cases in which insureds or their agents accept or receive a copy of the policy but fail to read its terms, *see Karp v. Metropolitan Life Ins. Co.*, 86 N.H. 124, 164 A. 219 (1933); *Gagne v. Massachusetts Bonding & Ins. Co.*, 78 N.H 439, 101 A. 212 (1917), there is a factual dispute here as to whether or not the restrictive endorsement in question was ever part of the contract mutually agreed to by the parties.

*Reversed and remanded.*

All concurred.