MERCER AND IRENE TREFETHEN

v.

NEW HAMPSHIRE INSURANCE GROUP

July 27, 1994

*Burns, Bryant, Hinchey, Cox & Schulte, P.A.*, of Dover (*Paul R. Cox* on the brief and orally), for the plaintiffs.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief and orally), for the defendant.

HORTON, J. New Hampshire Insurance Group (NHIG), defendant in the declaratory judgment action below, appeals from an order of the Superior Court (*Barry*, J.) requiring it to defend and indemnify the plaintiffs, Mercer and Irene Trefethen. NHIG argues that the trial court erred, *inter alia*, in allowing the plaintiffs to present theories that had been removed from the declaratory judgment ac-

tion, in determining which coverage was in effect, and in applying the doctrine of estoppel. We affirm.

The pertinent facts follow. The Trefethens opened a convenience store known as Red's Variety in 1985 and through David Marston, of the Tobey & Merrill insurance agency, purchased from NHIG a property owner's liability policy that included a standard liquor liability exclusion. On October 30, 1987, Marston visited the store and, noticing that the Trefethens were selling homemade sandwiches, suggested that they get additional coverage. Mercer Trefethen testified at a hearing in the declaratory judgment proceeding that although there was no specific mention of liquor liability, he told Marston that he "wanted to be covered [immediately] for everything," and that Marston responded that "he'd put it on that day." The trial court found that Trefethen had "requested additional coverage to include *every saleable item*" (emphasis in original), and that, by agreement, "[c]overage was to apply [as of] October 30, 1987." On November 27, 1987, two minors were killed in an alcohol-related car crash after allegedly purchasing beer at Red's Variety. After the accident, but without notifying NHIG of the accident, Marston submitted a request to NHIG for comprehensive general liability coverage retroactive to October 30, 1987. NHIG issued the retroactive comprehensive coverage, and although it contained the same liquor exclusion as had the property owner's coverage, no copy of the new comprehensive form was provided to the Trefethens. The minors' estates brought civil actions against the Trefethens. Pointing to the liquor exclusion, NHIG indicated it would neither provide coverage nor defend the lawsuits.

The Trefethens filed a declaratory judgment action against NHIG, alleging, *inter alia*, that Tobey & Merrill was NHIG's agent and that NHIG was "legally bound by the various representations, errors, and omissions" of Tobey & Merrill. NHIG moved to dismiss, arguing that the plaintiffs' main claim was one against Tobey & Merrill for failing to properly procure insurance, and that such a claim should be litigated in an action at law in contract or negligence rather than in a declaratory judgment action. NHIG withdrew its motion after the plaintiffs stipulated that they would sue Tobey & Merrill (NHIG was also named as a defendant in the civil action under a theory of vicarious liability). After bringing the civil action, the Trefethens moved to amend the declaratory judgment petition to remove "all claims by the plaintiffs that the New Hampshire Insurance Group is *vicariously liable* for their agent, Tobey & Merrill, Inc.'s legal fault . . . ." (Emphasis added).

An evidentiary hearing was held in the declaratory judgment action at which the Trefethens attempted to introduce evidence of an agency relationship between NHIG and Tobey & Merrill, and to elicit testimony concerning their expectations of coverage based on the October 30, 1987, conversation with Marston. NHIG objected, arguing that the pretrial stipulation and the amended petition limited the scope of the declaratory judgment action to simply an interpretation of the written policy, and that the issues to which the Marston conversation was relevant—including questions of agency, estoppel and improper procurement of insurance—were part of the action brought against Tobey & Merrill. The trial court disagreed and admitted the evidence. The trial court required NHIG to provide coverage and a defense, ruling that an oral contract for insurance had been formed on October 30, that based on the conversation the Trefethens reasonably expected that they had liquor liability coverage, and that the liquor exclusion under the comprehensive coverage was not effective because the Trefethens were not informed of the exclusion.

■ NHIG first argues that the trial court erred in allowing the Trefethens to argue and present evidence on the issues of agency and estoppel because these issues had been removed from the declaratory judgment action by the stipulation and the amended petition. We disagree. First, although NHIG now argues that the stipulation removed from the declaratory judgment action all issues save interpretation of the written policy, NHIG's motion to dismiss (which precipitated the stipulation) and the stipulation itself specifically refer only to the separate litigation of the issue of improper procurement of insurance; neither specifically refers to severance of agency or estoppel theories. Second, consideration of the amended petition does not help NHIG because the Trefethens asked only that theories of *vicarious* liability against NHIG be stricken; theories of coverage based on contract principles of agency or estoppel, however, are theories of *direct* liability, and thus were unaffected by the amendment of the declaratory judgment petition. Third, NHIG should reasonably have been prepared for the possibility that the trial court would entertain agency and estoppel theories. When NHIG moved for summary judgment arguing that the only question before the court was one of interpretation of the written policy, the Trefethens objected, arguing that material issues of fact remained with regard to what representations were made by Marston and whether they received a copy of the new comprehensive policy. In denying NHIG's motion, the trial court noted that "the Trefethens maintain that there is a

dispute . . . as to what constitutes the insurance contract." Finally, we note that at the evidentiary hearing it was NHIG who, contrary to its current position that the stipulation restricted the declaratory judgment action to one of written policy interpretation, first elicited evidence on issues of agency and estoppel, including testimony from Mercer Trefethen about his October 30 conversation with Marston.

We turn now to NHIG's substantive arguments. NHIG first argues that the trial court erred in finding that comprehensive liability coverage was in effect at the time of the accident. According to NHIG, the property owner's policy was not supplanted because Marston's first formal request to NHIG for a coverage change was not made until after the accident and without notice of it. NHIG insists that "an agent cannot bind a carrier for a previously known loss without disclosing the loss." This argument is flawed inasmuch as there is no evidence in the record that the loss was "known" to Marston when he made the formal request for coverage (Mercer Trefethen testified that he was not aware of the loss until January 1988). Further, even assuming that Marston failed to disclose a known loss, this is a much different case than one in which the *insureds* made misrepresentations on an application for insurance. Absent proof of some misrepresentation attributable to the insureds, we see no reason effect should not be given to NHIG's voluntary backdating of comprehensive coverage. The issue of voluntary backdating aside, the trial court could have properly found that comprehensive coverage was in effect at the time of the accident because Marston, as an agent for NHIG, created an oral binder by virtue of his October 30 discussion with Mercer Trefethen. *See Elliott v. Insurance Co.*, 92 N.H. 505, 510–12, 33 A.2d 562, 567 (1943) (finding oral contract for insurance notwithstanding fact that some essential contract terms, including duration and premium, were never expressed: "[a]s to these [essential] elements implication is enough without expression").

NHIG next argues that even if comprehensive coverage was in effect at the time of the accident, the trial court erred in not giving effect to the liquor liability exclusion contained in the written terms of the undelivered comprehensive form. The Trefethens disagree, arguing that the exclusion was not effective because it was never delivered to them, *see Green Mt. Ins. Co. v. Bonney*, 131 N.H. 762, 767–68, 561 A.2d 1057, 1060–61 (1989), and that NHIG should be estopped from denying coverage because the Trefethens reasonably expected that they were covered based on the October 30 conversation with Marston. We need not reach the questions of (1) whether nondelivery

of the policy, without more, would render the liquor exclusion unenforceable, or (2) whether Marston's representations at the time a binder was created could serve to estop NHIG from denying coverage even after delivery of a written policy. Instead, in order to affirm, we need only hold that nondelivery of a written policy coupled with Marston's October 30 representations were sufficient to estop NHIG from denying coverage.

■ While "the general rule is that [an oral] binder provides only as much coverage as the policy would have provided," *see* A. WINDT, INSURANCE CLAIMS AND DISPUTES § 6.34 (2d ed. 1988), as we explained in *Robbins Auto Parts, Inc. v. Granite State Insurance Co.*, 121 N.H. 760, 435 A.2d 507 (1981):

> "Where the terms of the [insurance] policy are clear and unambiguous, an insured may not reasonably expect coverage unless the parties' prior dealings would lead the insured to form a reasonable belief that the policy provided him the claimed coverage or unless the insured's reliance on the insurer's agent's assurances was reasonable so as to estop the company from denying coverage."

*Id.* at 762–63, 435 A.2d at 509 (quotations and citations omitted); *see also Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 690–91, 406 A.2d 711, 714–15 (1979) (agent's knowledge of an insured's needs and expectations are imputed to the insurance company so that it may be estopped from denying coverage). NHIG argues, however, that the doctrine of estoppel cannot be used to bring within the coverage of the policy risks not included in its terms. *See Johnson v. Liberty Mut. Ins. Co.*, 113 N.H. 8, 11, 300 A.2d 57, 59–60 (1973). Therefore, NHIG argues, it cannot be estopped from denying liquor liability coverage because not only did the Trefethens' comprehensive policy not cover that risk, NHIG did not even sell liquor liability policies at that time. Despite some early pronouncements to this effect, in more recent years we have applied the doctrine of estoppel even where written policies unambiguously did not extend coverage. *See Boyce v. Concord Gen. Mut. Ins. Co.*, 121 N.H. 774, 779–80, 435 A.2d 510, 514 (1981) (insured entitled to coverage for accident involving trailer notwithstanding that policy unambiguously did not cover trailer where insured reasonably believed coverage existed based on dialogue with agent); *Olszak*, 119 N.H. at 690–91, 406 A.2d at 714–15 (insurer estopped from denying coverage for snowplower sued by person who slipped on icy parking lot notwithstanding that policy contained "completed operations" exclusion); *see also V & V Corp. v.*

*American Policyholders' Ins. Co.*, 127 N.H. 372, 500 A.2d 695 (1985); *Karol v. N.H. Ins. Co.*, 120 N.H. 287, 414 A.2d 939 (1980). We adhere to this line of cases and hold that the plaintiffs' reasonable expectations of coverage based on prior dealings with NHIG's agent may be enforced despite clear and unambiguous policy language to the contrary.

■ Finally, NHIG argues that even if estoppel may be used "offensively" so as to create coverage not in the written policy, the dealings between the Trefethens and Marston were insufficient to create an enforceable specific expectation of coverage. *See Allen v. Sentry Insurance*, 137 N.H. 579, 582, 630 A.2d 780, 782 (1993). NHIG points out that the Trefethens testified that they never specifically discussed liquor liability coverage with Marston. In order to find a reasonable expectation of coverage based on prior dealings, NHIG argues, we must impose on insurance agents the duty to know all the insured's needs, to procure appropriate coverage, and to inform the insured of every facet of the coverage. We need not recognize such a duty in order to affirm, however, and instead agree with the trial court that an enforceable specific expectation of liquor liability coverage arose from the Trefethens' request for coverage on every saleable item coupled with Marston's knowledge that beer was one of those items.

We have considered NHIG's other arguments and find them unpersuasive. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.