Rockingham
No. 94-287

TOWN OF LONDONDERRY

v.

NEW HAMPSHIRE MUNICIPAL ASSOCIATION PROPERTY
LIABILITY INSURANCE TRUST, INC. & a.

November 15, 1995

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Doreen F. Connor* on the brief, and *Ms. Connor* orally), for the plaintiff.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Robert E. Kirby & a.* on the brief, and *David A. Garfunkel* orally), for the defendants.

BATCHELDER, J. The plaintiff, the Town of Londonderry (town), appeals the Superior Court's (*McHugh*, J.) grant of summary judgment to the defendant insurance companies in the town's declaratory judgment action seeking coverage and defense of a suit

brought against it by Boston North Associates, Inc. (Boston North). We affirm.

The town and Boston North were involved in a project to develop a new interchange for Interstate 93 that would provide a by-pass for Route 102 traffic. Following expressions of disapproval of the project by members of the Londonderry Board of Selectmen and the town voters' repeal of the $5,000,000 appropriation, Boston North lost its bank financing for the project. Boston North sued the town, alleging breach of contract.

The town sought defense and indemnity from the defendant insurance companies—New Hampshire Municipal Association Property Liability Insurance Trust, Inc. (Trust), which provided the first $200,000 of coverage, Underwriters at Lloyd's of London, which provided the next $800,000 of coverage, and International Surplus Lines Insurance Company, which provided the remaining $500,000 of coverage. When the defendants denied coverage, the town petitioned for declaratory judgment.

Both the town and the defendants sought summary judgment. The trial court found that "Boston North's claims against the plaintiff do not amount to 'personal injuries' pursuant to the defendants' policies and that the defendants are not obliged to indemnify or defend the plaintiff in regard to said claims" and granted the defendants' motion for summary judgment. This appeal followed.

In reviewing the grant of a motion for summary judgment, we consider the affidavits and all reasonable inferences drawn from them in the light most favorable to the non-moving party. *Dwire v. Sullivan*, 138 N.H. 428, 430, 642 A.2d 1359, 1360 (1994). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. RSA 491:8-a, III (1983).

The town first argues that Boston North's writ triggered a duty to defend under the language of the Trust's summary of coverage. The trial court found "that the Trust's own coverage and defense obligations are governed by the Lloyd's policy." Nevertheless, the town now maintains that the Trust's summary of coverage controls the defendants' defense obligations, rather than the Lloyd's policy.

■ The interpretation of insurance policy language is a question of law for this court to decide. *Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 59, 623 A.2d 746, 747 (1993). "We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." *Id.* (quotation omitted).

■ The first page of the summary of coverage provided by the Trust clearly states that the document merely summarizes coverage and refers the participant to the Lloyd's of London policy for coverage specifics. Additionally, each subsequent page concludes:

IMPORTANT    This document is merely a summary of
NOTICE:    your rights and claims to benefits. See the first
        paragraph of Page 1 of this document.

We conclude that the reasonable insured would understand that the Lloyd's policy, and not the Trust's summary, controlled the defendants' defense obligations. Hence, the town's argument that language in the Trust summary triggers a duty to defend is without merit.

■ The town further argues that the Trust may not rely upon exclusionary policy language that it did not provide to its insured. This argument fails as well. As noted above, the Lloyd's policy, which contains the exclusionary language, governs coverage. Failing to provide the town with a copy of the exclusionary language in the Lloyd's policy, however, is not a fatal flaw. "[T]he delivery of a copy of the full insurance policy text is not a condition precedent to a valid insurance contract." *Green Mt. Ins. Co. v. Bonney*, 131 N.H. 762, 767, 561 A.2d 1057, 1060 (1989). Rather, all that is required is that the insurer "in some manner inform the insured of the restrictive policy language." *Id.* at 768, 561 A.2d at 1060.

■ Here, the Trust's summary of coverage specifically refers the insured to the Lloyd's policy for "the terms, conditions and exclusions" of coverage. It further provides that copies of the coverage documents are available from the Trust upon request. Consequently, having been put on notice that the specific terms of coverage appeared in a supplemental document, the town is entitled to no greater relief for not obtaining the coverage document than is an insured who is delivered a policy but fails to read it. *See Karp v. Insurance Co.*, 86 N.H. 124, 125, 164 A. 219, 220 (1933).

*Affirmed.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.