Hillsborough-northern judicial district
No. 98-797

GENEVIEVE PRZEKAZA

v.

GENERAL ACCIDENT INSURANCE COMPANY OF CANADA

February 12, 2001

*Joseph F. McDowell, III, P.A.*, of Manchester (*Joseph F. McDowell, III* and *David C. Dunn* on the brief, and *Mr. Dunn* orally), for the plaintiff.

*Law Offices of Rodney L. Stark, P.A.*, of Manchester (*Cynthia L. Fallon* on the brief and orally), for the defendant.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Robert C. Dewhirst* on the brief), for the intervenor, Sister Pauline C. Gamache.

DALIANIS, J. The defendant, General Accident Insurance Company of Canada, appeals the Superior Court's (*Barry*, J.) grant of summary judgment in favor of the plaintiff, Genevieve Przekaza, on her petition for declaratory judgment. We affirm.

"Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Grossman v. Murray*, 141 N.H. 265, 269 (1996).

The following facts appear in the record. Sister Pauline Gamache (Sister Pauline), the intervenor, is a Sister of Charity of Providence. On November 7, 1995, while driving a car registered to the Sisters of Charity of Providence (the "Sisters"), Sister Pauline struck the

plaintiff as she was crossing Bridge Street in Manchester. The "mother house" for the Sisters is located in Montreal, Quebec. At the time of the accident, the Community of the Sisters of Charity of Providence (the "Community") had an automobile liability insurance policy with the defendant.

The plaintiff sued Sister Pauline in 1996 and the Sisters in 1997. In May 1998, the plaintiff petitioned for declaratory judgment. Both the plaintiff and the defendant moved for summary judgment. The trial court granted the plaintiff's motion and denied the defendant's, ruling that the defendant's policy covered Sister Pauline's car and that the defendant had a duty to indemnify her because she was driving a covered vehicle.

The defendant's policy consists of: a cover page (F.P.Q. no. 1A), three endorsements (F.A.Q. nos. 2, 21b, and 25), lists identifying fifty-two vehicles, lists of principal drivers, and a standard Quebec Automobile Insurance Policy Form. Because all but the standard Quebec Automobile Insurance Policy Form are written in French, the parties provided the court with English translations of these policy provisions.

The trial court based its ruling, in part, upon its finding that the policy was "at a minimum . . . ambiguous as to the number of vehicles [it] covered." On appeal, the defendant contends that the trial court erred when it (a) permitted the plaintiff to raise ambiguity even though she was not a party to the insurance contract; (b) found the policy ambiguous; (c) construed the ambiguity against the defendant; and (d) found that the policy covered Sister Pauline's vehicle.

While we agree with the defendant that the trial court erred when it found the policy ambiguous, we nonetheless affirm its ruling. *See Quinlan v. City of Dover*, 136 N.H. 226, 230 (1992). Because we conclude that the policy is unambiguous, we consider only whether it covered Sister Pauline's vehicle and do not reach the defendant's remaining arguments.

■■ "The interpretation of an insurance policy is a question of law for this court to decide." *Bianco Prof. Assoc. v. Home Ins. Co.*, 144 N.H. 288, 292 (1999). "In interpreting an insurance policy, we take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." *Federal Bake Shop v. Farmington Cas. Co.*, 144 N.H. 40, 42 (1999) (quotation omitted). The burden of

establishing that coverage is not provided is upon the insurer. *See Weeks v. St. Paul Fire & Marine Ins. Co.*, 140 N.H. 641, 643 (1996); *see also* RSA 491:22-a (1997).

The defendant contends that the policy does not provide coverage because: (1) the Sisters located in Manchester is not an insured; (2) Sister Pauline is not a named principal driver; (3) Sister Pauline's car is not one of the fifty-two vehicles on the incorporated lists; (4) Sister Pauline's car is not "principally used" in Canada; and (5) neither Sister Pauline nor the Sisters reasonably expected coverage. We address each argument in turn.

Article 1 of the policy lists the "assured" as the "Community of the Sisters of Charity of Providence" in Montreal, Quebec. General Endorsement F.A.Q. no. 25 modifies Article 1 and states that the name of the insured is as follows: "THE COMMUNITY OF SISTERS OF CHARITY OF PROVIDENCE INCLUDING THE SISTERS OF NOTRE-DAME-OF-THE-SEVEN-DOLORS AND ALL ITS . . . INCORPORATED HOUSES." On its face, then, the policy applies to the entire Community and would include the Sisters located in Manchester as an insured.

Contrary to the defendant's assertion that the policy is limited to the Community's Canadian houses, F.A.Q. no. 25 contains no such limitation.

The defendant next argues that Sister Pauline is not insured because she is not a named principal driver. At oral argument, however, the defendant conceded that the policy's coverage is not limited to principal drivers. Section A of the standard Quebec Automobile Insurance Policy requires the defendant to indemnify "in the same manner and to the same extent as if named herein as the insured, *every . . . person* who . . . drives [a covered] automobile." (Emphasis added.)

The defendant next contends that Sister Pauline's car is not covered because it is not specified on one of the incorporated lists. While the defendant acknowledges that the policy contains a fleet coverage endorsement, it contends that this endorsement extends only to the fifty-two listed vehicles. We disagree.

F.A.Q. no. 21b, the fleet coverage endorsement, states in paragraph (a) that the policy covers "all automobile ground vehicles of which the Assured is, during the contract, either the real and registered proprietor or the renter." Paragraph (b) of F.A.Q. no. 21b states that the vehicles designated in paragraph (a) when the parties entered into the insurance contract "[a]re kept in the list

given to the Insurer by the Insured." Rather than limiting coverage as the defendant urges, Paragraph (b) of F.A.Q. no. 21b merely explains that at the time that the parties entered into the insurance contract, the insureds provided a list of their vehicles to the defendant.

The evident purpose of the fleet coverage endorsement is to provide coverage to "all" of the insureds' vehicles, and not to limit coverage only to vehicles appearing on a furnished list. Paragraphs (c), (d), and (e) of F.A.Q. no. 21b and General Endorsement F.A.Q. no. 25 further demonstrate this intent. F.A.Q. no. 21b (c) makes the annual premium "only provisional." F.A.Q. no. 21b (d) states that the premium is adjustable and General Endorsement F.A.Q. no. 25 explains that this adjustment is based upon the insureds' total number of vehicles during the policy period and that the total number of the insureds' vehicles during the policy period was eighty-two. F.A.Q. no. 21b (e) requires the insureds to permit the defendant to audit their books to determine the number of covered vehicles. If F.A.Q. no. 21b (a) was not intended to cover "all" of the insureds' vehicles, these other policy provisions would be superfluous.

The defendant agrees that General Endorsement F.A.Q. no. 25 refers to a premium based upon eighty-two vehicles and concedes that the policy may have covered thirty more vehicles than the fifty-two listed, but asserts that "nothing within the entire policy, including the premium page would lead a reasonable person in the position of the insured to conclude that coverage was provided for [Sister Pauline's car]." We disagree. The plain language of the fleet coverage endorsement extends to "all" of the insureds' vehicles, and the defendant failed to prove that Sister Pauline's car was not one of those vehicles.

■ Finally, the defendant argues that the policy was intended to cover only vehicles "principally used" in Canada, and thus did not cover Sister Pauline's New Hampshire car. The policy's geographic scope, however, extends to the United States. Section B, Article 1 of the standard Quebec Automobile Insurance Policy states that "insurance provided by this policy applies only within Canada, the United States of America, or upon a vessel between ports of those countries."

Because we find the policy clear, we need not reach the issue of the parties' reasonable expectations of coverage. "Absent ambiguity, our search for the parties' intent . . . is limited to the words of the

polic[y]." *Concord Hospital v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 686 (1993).

*Affirmed.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.