Coos
No. 2003-077

RACHEL GODBOUT, EXECUTRIX OF THE ESTATE OF ROGER GODBOUT

v.

LLOYD'S INSURANCE SYNDICATES MESSRS. MENDES AND MOUNT

Argued: July 10, 2003
Opinion Issued: October 2, 2003

*Coolidge, Mathieu, Barrington & Couture, PLLC*, of Somersworth (*Gregory R. Couture* on the brief and orally), for the plaintiff.

*Morrison, Mahoney & Miller LLP*, of Boston, Massachusetts (*Debra M. Walsh* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Lloyd's Insurance Syndicates Messrs. Mendes and Mount (Lloyd's), appeals an order from the Superior Court (*Smith*, J.) denying its motion for summary judgment and granting summary judgment to the plaintiff, Rachel Godbout, executrix of the estate of Roger Godbout (estate). On appeal, Lloyd's argues that the court erred in concluding that the estate was entitled to coverage under an insurance policy it issued to Roger Godbout (decedent). We reverse.

The trial court found the following facts. In March 1999, the decedent assembled a Rotorway helicopter that he had purchased as a kit. He traveled to Rotorway's training facility in Arizona to receive flight instruction after which he was certified for "translational flight" at a maximum of thirty-five feet above ground level. In August 1999, the decedent applied for Personal Accident Flying Insurance from Lloyd's, and paid $5,250 for a policy. The defendant's agent issued a confirmation of insurance that detailed the type of coverage, helicopter, coverage limits and deductibles. In small type under the confirmation information was the following: "The insurance is subject to the terms, conditions, limitations and exclusions of the referenced policy, or if no policy is referenced, the policy in current use by the company."

The decedent did not receive his policy. On October 30, 1999, he crashed his helicopter in the White Mountain National Forest, and died as a result of his injuries. Immediately prior to the crash, he was flying approximately

fifty feet above trees that were approximately fifty feet tall; thus he was outside the parameters of his certification.

Lloyd's denied liability coverage based upon an exclusion for "loss or damage occurring when the pilot flying the helicopter is flying outside the parameters of . . . the certificate issued to the pilot by Rotorway." The trial court found that although the policy language was clear and unambiguous, the denial of coverage was improper since a reasonable person in the decedent's position would not have been on notice that the exclusion was part of the coverage that had been confirmed. The court concluded that because the decedent did not have notice of the exclusion, there was no "meeting of the minds" between the decedent and the insurer; hence the provision was not a valid part of the insurance contract.

Lloyd's argues that it had no duty to accept the risk of the decedent's decision to fly beyond the parameters of his flying certificate. It argues that the exclusion is applicable because the policy language was clear and unambiguous, and the insured's subjective expectation of coverage is irrelevant to the policy interpretation. We agree.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Town of Londonderry v. N.H. Mun. Assoc. Prop. Liab. Ins. Trust*, 140 N.H. 440, 441 (1995). "If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper." *Id.* We review the trial court's application of the law to the facts *de novo. Sintros v. Hamon*, 148 N.H. 478, 480 (2002).

"The interpretation of insurance policy language is a question of law for this court to decide." *Londonderry*, 140 N.H. at 441. "We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." *Id.* (quotation omitted). Policy terms are construed objectively, and "[w]here the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning." *Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 683 (1993). We need not examine the parties' reasonable expectations of coverage when a policy is clear and unambiguous; "[a]bsent ambiguity, our search for the parties' intent is limited to the words of the policy." *Przekaza v. Gen. Accident Ins. Co. of Canada*, 146 N.H. 40, 43-44 (2001) (ellipsis omitted).

The estate argues that the holding in *Trefethen v. New Hampshire Insurance Group*, 138 N.H. 710 (1994), supports the trial court's entry of

summary judgment on its behalf. In *Trefethen*, the plaintiffs owned a convenience store and purchased an insurance policy that included a liquor liability exclusion. *Id.* at 711. Later the plaintiffs requested additional coverage for "everything," and the insurance agent said he would "put it on that day." *Id.* (quotations omitted). The plaintiffs were sued after two minors were killed in an alcohol-related car accident after purchasing beer at the plaintiffs' convenience store. *Id.* The defendant denied insurance coverage because the policy contained a liquor exclusion. *Id.* We applied an estoppel theory to prevent the insurer from denying coverage even though the policy unambiguously excluded coverage. *Id.* at 714. We reasoned that the insured's prior dealings with the insurance agent, in which the insured requested coverage for every saleable item, coupled with the agent's knowledge that the insured sold alcohol, created an enforceable expectation of insurance coverage. *Id.* at 715.

This case is distinguishable from *Trefethen*. In this case, there is no evidence that the decedent requested, or the insurance agent promised, unlimited insurance coverage that exceeded the scope of his flying certificate. Furthermore, in *Trefethen*, the activity for which the insureds sought insurance coverage — the sale of beer — was obvious and within the reasonable parameters of their business. Here, however, the activity for which the estate seeks coverage — flying a helicopter outside the scope of a flying certificate — is neither obvious to an insurance agent nor, based upon the evidence that the decedent was flying one hundred feet above ground, within the reasonable parameters of safe flying.

The estate also argues that the decedent did not receive notice that an exclusion in his policy would "have grounded him and his helicopter." It argues that the decedent paid a premium for damage or death resulting from flying his helicopter, and because that is what happened, the estate should receive the insurance coverage. Finally, it argues that the policy was ambiguous because the decedent received a confirmation of insurance that stated the material terms of the agreement but merely noted that it was "subject to the terms, conditions, limitations and exclusions" provided in the policy.

■ In the past, we have rejected the argument that exclusionary provisions are not binding upon a deceased who had no actual knowledge of them. *Karp v. Insurance Co.*, 86 N.H. 124, 125 (1933). The language of an insurance policy is binding, and an insured's failure to learn of the provisions of the policy "furnishes no legal ground for nullifying its conditions." *Id.* This rule is applicable even if the insurer does not provide the insured with a copy of the exclusionary language. The delivery of a copy of the full insurance policy text is not a condition precedent to a valid

insurance contract. Rather, all that is required is that the insurer in some manner inform the insured that the policy contains restrictive language. *See Londonderry*, 140 N.H. at 442.

In *Londonderry*, a summary of insurance coverage, which referred the insured to the full policy for the terms, conditions and exclusions of coverage, was sufficient to put the insured on notice that the specific terms of coverage appeared in a supplemental document. *Id.* Similarly, in this case, the decedent's confirmation of insurance included a notation that the coverage was subject to certain exclusions contained in the policy itself. Furthermore, that the decedent was aware of the limitations contained within his flying certificate is not disputed.

■ The insurance policy at issue clearly states that the insurance does not cover "loss or damage occurring when the pilot flying the helicopter is flying outside the parameters of . . . the certificate issued to the pilot by Rotorway." We agree with the trial court's finding that this language is unambiguous. "While this court will resolve ambiguities in an insurance policy in favor of the insured, we will not force an ambiguity in order to resolve it against an insurer." *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 764 (1981) (citation and quotation omitted). "The ambiguity rule . . . will not be applied so as to create coverage where it is clear that none is intended." *Id.*

Because the exclusion is unambiguous, we conclude that it is unnecessary to examine the parties' reasonable expectations. *See Przekaza*, 146 N.H. at 43-44. There is no dispute that the decedent was flying outside the parameters of his flying certificate. Thus the trial court incorrectly concluded that the deceased was entitled to insurance coverage, and therefore it erred when it denied Lloyd's motion for summary judgment and granted the estate's motion for summary judgment.

*Reversed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.