Merrimack
No. 2010-110

CONCORD GENERAL MUTUAL INSURANCE COMPANY

v.

JANE DOE & a.

Argued: September 16, 2010
Opinion Issued: October 27, 2010

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for the petitioner.

*McDowell & Osburn, P.A.*, of Manchester (*David S.V. Shirley* and *Jeffrey B. Osburn* on the brief, and *Mr. Shirley* orally), for respondent Jane Doe.

*Mallory & Friedman, PLLC,* of Concord (*Christine Friedman* on the memorandum of law), for respondent Mount Washington Assurance Corporation.

CONBOY, J. Respondent Jane Doe appeals an order of the Superior Court (*Mangones,* J.) granting the petitioner, Concord General Mutual Insurance Company (Concord General), summary judgment on its petition for a declaratory ruling that it is not obligated to provide coverage for injuries Doe suffered as a result of sexual assaults occurring inside an uninsured/underinsured vehicle. We affirm.

The facts are undisputed. Doe became acquainted with Matthew McGonagle while she was a student in the Gilford School System. McGonagle was at various times Doe's teacher and drama instructor. Between November 1999 and February 2000, McGonagle committed a series of sexual assaults on Doe, who was then fourteen years old. While some of the assaults occurred on school property, the majority occurred in McGonagle's vehicle, either while he was driving or while the vehicle was parked with the engine running. The assaults, which included kissing, fondling above and below clothing, and digital vaginal penetration, occurred

while Doe was either sitting in the passenger seat or sitting on McGonagle's lap while he drove. As a result of the assaults, Doe suffered physical discomfort as well as emotional trauma that resulted in psychiatric and psychological injury.

At all relevant times, Doe was an insured under Concord General automobile and umbrella policies; McGonagle's vehicle, in which the assaults occurred, was covered under a policy with Mount Washington Insurance Corporation (Mt. Washington). After Mt. Washington denied that its policy with McGonagle provided coverage for Doe's alleged damages, Doe sought uninsured/underinsured coverage from Concord General.

Concord General denied coverage and subsequently brought this declaratory proceeding against Doe and Mt. Washington, seeking a declaratory ruling that it was not obligated to provide coverage. Alternatively, Concord General asserted that if it were obligated to provide coverage, Mt. Washington would be obligated to provide coverage as well, thereby offsetting Concord General's obligation. All three parties moved for summary judgment. The trial court granted Concord General's motion, denied Doe's motion, and determined that Mt. Washington's motion was moot. On appeal, Doe argues that the trial court erred in determining that her injuries did not arise out of the use of McGonagle's vehicle.

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* "We review the trial court's application of the law to the facts *de novo.*" *Id.*

■ Our review in this case requires the interpretation and application of the petitioner's insurance contract. *See State Farm Mut. Ins. Co. v. Pitman*, 148 N.H. 499, 501 (2002). The interpretation of insurance policy language is a question of law for this court to decide. *Godbout v. Lloyd's Ins. Syndicates*, 150 N.H. 103, 105 (2003). We construe the language as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Id.* Policy terms are construed objectively; where the terms are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.*

■ The Concord General policy provides that it "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of . . . [a]n 'uninsured motor vehicle' . . . because of 'bodily injury'

sustained by an insured' and caused by an accident . . . ." The policy further states that "liability for these damages must arise out of the ownership, maintenance, or use of the 'uninsured motor vehicle.' " We have interpreted this clause to mean that the injury must originate from, grow out of, or flow from the use of the vehicle. *Akerley v. Hartford Ins. Group*, 136 N.H. 433, 439 (1992). "Generally, a causal connection must exist between the resulting harm and [the] use of the vehicle in order to invoke coverage." *Id.* "Although proximate causation is not required, a tenuous connection with an automobile is not sufficient to warrant coverage." *Id.* Here, we must determine whether Doe's injuries arose out of McGonagle's "use" of his vehicle. We have interpreted "use" of an automobile to mean "use of the automobile in its inherent nature as a vehicle." *Walsh v. Arnica Mut. Ins. Co.*, 141 N.H. 374, 375 (1996).

In *Akerley*, where a police officer sought uninsured motorist coverage for injuries he sustained while removing an uninsured motorist from the motorist's vehicle, we concluded that the officer's insurer had no obligation to provide coverage because the vehicle was merely the situs of the injury. *Akerley*, 136 N.H. at 440. After noting that the injury was caused "by the suspect resisting arrest and not by the suspect using his vehicle," we held that when a vehicle acts as merely the situs of an injury, the causal connection between the injury and the use of the vehicle is too tenuous to support coverage. *Id.*; *see also Doe v. State Farm Fire and Cas. Co.*, 878 F. Supp. 862, 865 (E.D. Va. 1995) (no coverage for injuries sustained by a petitioner who was robbed, forced into a vehicle, and subsequently driven to various locations where her assailant stopped the car and assaulted her within the vehicle because vehicle was merely the situs of the injury).

Doe argues that McGonagle's vehicle was not merely the situs of her injuries because, unlike in *Akerley*, the assaults occurred while McGonagle was "using" the vehicle. However, it is not sufficient that the vehicle was in use; rather, the injuries must originate from, grow out of, or flow from that use. *Akerley*, 136 N.H. at 439. A useful example of such a causal nexus is found in *Wilson v. Progressive Insurance Co.*, 151 N.H. 782 (2005). In *Wilson*, a taxi cab passenger sustained an injury when the driver closed the cab's door on her dog's tail, causing the dog to bite her. In that case, we found that the insurer was obligated to provide uninsured motorist coverage because "the injury was the result of the taxi driver closing the car door, an act that is part of using an automobile." *Wilson*, 151 N.H. at 792.

Doe further argues that her injuries are causally connected to the use of the vehicle because the vehicle was the one location where McGonagle

was sure to have unchaperoned access to her. This is essentially a "but for" causation argument which posits that "but for" the vehicle, McGonagle would not have had access to Doe. We agree with those jurisdictions that have rejected the "but for" causation test for purposes of determining whether an injury arose out of the use of a vehicle. *See, e.g., Doe*, 878 F. Supp. at 865 ("[T]he fact that a criminal assault temporally followed closely on the heels of the use of a vehicle as a vehicle, and perhaps would not have occurred but for that use, presents an insufficient causal nexus between injury and vehicle use to trigger insurance coverage under the policy language in issue."); *Commerce Ins. v. Ultimate Livery Service*, 897 N.E.2d 50, 62 (Mass. 2008) (The expression "arising out of" does not refer to all circumstances in which the injury would not have occurred but for the involvement of a vehicle.); *Erie Ins. Co. Exchange v. Jones*, 448 S.E.2d 655, 658 (Va. 1994) (rejecting the "but for" test of causation and endorsing the position that the "injury must be foreseeably identifiable with the normal use of the vehicle" (quotation omitted)). The proper inquiry is whether the injury originated from, grew out of, or flowed from the use to which the vehicle was being put. *Akerley*, 136 N.H. at 439. Thus, the allegation that McGonagle may not have had access to Doe absent the use of his vehicle is insufficient to establish the necessary nexus between the use of the vehicle and Doe's injuries.

Finally, Doe cites several cases where the causal nexus between a passenger's injuries and the use of a common carrier was sufficient to support coverage. *See Huntington Cab Co. v. American Fidelity & Casualty Co.*, 155 F.2d 117 (4th Cir. 1946); *Roe v. Lawn*, 634 N.E.2d 117 (Mass. 1994). Doe argues that the reasoning in those cases is applicable here because when McGonagle voluntarily transported her in his private vehicle, he assumed a duty of safe passage analogous to that assumed by common carriers. In support of this argument, Doe cites cases in which we have recognized that one may voluntarily assume a duty of care by implication. *See Ward v. Inishmaan Assocs. Ltd. P'ship*, 156 N.H. 22, 25 (2007) (a landlord who undertakes to provide security has a duty to act with reasonable care); *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 413 (2004) (a speedway that voluntarily undertakes to direct traffic has a duty to act with reasonable care); *Williams v. O'Brien*, 140 N.H. 595, 599 (1995) (a motorist who signals another motorist to proceed into an intersection may undertake a duty of care to other motorists where it is foreseeable that the other motorists will not independently insure that the way is clear); *Walls v. Oxford Mgmt. Co.*, 137 N.H. 653, 659 (1993) (a landlord who voluntarily undertakes to provide security will thereafter have a duty to act with reasonable care); *Corson v. Liberty Mut. Ins. Co.*, 110 N.H. 210, 212 (1970) (a workers' compensation insurer that voluntarily undertakes assis-

tance to the employer by providing additional inspections may be liable to an injured employee for negligent inspection). None of these cases, however, supports the proposition that an individual who voluntarily transports another impliedly assumes the common carrier duty of safe passage as a matter of law, and we decline to so hold here.

Considering the facts in the light most favorable to Doe, we cannot say that her injuries originated from, grew out of, or flowed from McGonagle's use of his vehicle. While there is no dispute that at the time of several of the assaults, McGonagle was driving, and thus "using" his vehicle, Doe's injuries resulted from the assaults, and not from use of the vehicle. Here, as in *Akerley*, where the vehicle was merely the situs of the injuries, the causal connection between the use of the vehicle and the injuries is too tenuous to support coverage. *See Akerley*, 136 N.H. at 440.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.