# United States Court of Appeals
## For the First Circuit

No. 10-2065

BEATRICE M. HUNT,

Plaintiff, Appellant,

v.

GOLDEN RULE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Boudin, Lipez and Howard
Circuit Judges.

Gordon R. Blakeney, Jr. for appellant.
William D. Pandolph, with whom Sulloway & Hollis, P.L.L.C.
was on brief, for appellee.

April 19, 2011

**HOWARD**, **Circuit Judge**.  In this insurance coverage case, plaintiff Beatrice Hunt appeals the district court's grant of summary judgment to defendant Golden Rule Insurance Company on her claims of breach of contract and unfair insurance trade practice. After de novo review, we affirm.

## I.

The background facts are undisputed.  Since 1987, Hunt was insured under a Golden Rule individual insurance policy providing two types of benefits:  major medical benefits and decreasing term life insurance.  As this case concerns the former, we turn first to the details of that coverage.

The Major Medical Benefits section of the policy, beginning at page 7, provides that Golden Rule will "pay for services and supplies that qualify as *Covered Expenses*" . . . and that the "amount payable will not exceed the *Maximum Benefit Limit* shown on page 3."[1]  The policy later indicates that "[t]he '*Maximum Benefit Limit*' is the total benefit that may be paid for *Covered Expenses* during the *covered person's* lifetime."[2]  Finally, under the Exclusions and Limitations section, the policy states in relevant part:

---

[1]For purposes of this opinion, we adhere to the policy's use of capitalization, italicization and other means of text emphasis.

[2]The parties agree that Hunt is a "covered person" within the meaning of the policy.

-2-

**Mental or Nervous Disorders:** Our total liability under the *policy* for all *losses* due to *mental* or *nervous disorders*, or mental retardation, of any one *covered person* will not exceed the amount shown on page 3.

Page 3 of the policy, referenced in both the Maximum Benefit Limit section and the Exclusion and Limitation section addressing Mental or Nervous Disorders, is the "Policy Data Page," which contains a listing of premium and benefit amounts. Included in this list are a "Maximum Benefit Limit Per Covered Person" of $1 million and a "Mental or Nervous Disorder Limit" of $10,000.

## II.

Hunt received outpatient treatment for a "mental or nervous disorder" in 2005, 2006 and 2007, allegedly incurring costs of more than $125,000. In January 2006, Golden Rule informed Hunt that because it "previously paid $8505.81 for mental disorders," it would pay only $1,494.19 -- for a total of $10,000 -- because "the lifetime maximum amount has been met."[3]

In early 2009, Hunt filed suit against Golden Rule in New Hampshire Superior Court, which Golden Rule seasonally removed to federal district court. Count I of her Complaint alleged that an ambiguity in the policy renders the $10,000 lifetime cap on mental

---

[3]The record is unclear as to the precise temporal breakdown of accrued or submitted charges during the 2005-07 time frame. The complaint alleges that more than $44,000 in charges accrued in 2005 alone, but admits to uncertainty as to what amount was submitted for reimbursement prior to the denial letter. As there is no dispute that the submitted amount exceeded $10,000, more specific information is not needed at this stage of the litigation.

or nervous disorder benefits unenforceable, and that the $1 million limit should apply instead.  Count II claims that the $10,000 cap impermissibly discriminates against policy holders with mental, as opposed to physical, afflictions, and thus is an unenforceable unfair insurance practice, prohibited by N.H. Rev. Stat. Ann. ("RSA") § 417:4 (2006).  The district court granted Golden Rule's summary judgment motion, ruling that the policy was not ambiguous as to the applicable limit, and that the limit differential was not proscribed by New Hampshire law.  This appeal followed.

## III.

We review the district court's grant of summary judgment de novo.  Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 77 (1st Cir. 2010).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under New Hampshire law, the interpretation of an insurance policy is a question of law for the court.  Concord. Gen. Mut. Ins. Co. v. Doe, 8 A.3d 154, 156-57 (N.H. 2010).

### A. Ambiguity

If an insurance policy's terms are clear and unambiguous, then the policy's language must be accorded its natural and ordinary meaning.  Id. (citing Godbout v. Lloyd's Ins. Syndicates, 834 A.2d 360, 362 (N.H. 2003)).  The court must "construe the language as would a reasonable person in the position of the

-4-

insured based upon a more than casual reading of the policy as a whole." Id. Terms are construed objectively. Id. If an ambiguity renders the policy reasonably susceptible to more than one interpretation, and one interpretation favors the insured, the policy will be construed in the insured's favor. N. Sec. Ins. Co. v. Connors, No. 2010-152, 2011 WL 1219252, at *3 (N.H. Mar. 31, 2011). If the language is clear, however, the court cannot "'perform amazing feats of linguistic gymnastics to find a purported ambiguity' simply to construe the policy against the insurer and create coverage where it is clear that none was intended." Colony Ins. Co. v. Dover Indoor Climbing Gym, 974 A.2d 399, 401 (N.H. 2009) (quoting Hudson v. Farm Family Mut. Ins. Co., 697 A.2d 501, 503 (N.H. 1997)).

Hunt's first claim of ambiguity is straightforward. She argues that the "total liability" reference in the Mental and Nervous Disorders Exclusion to "the amount shown on page 3" is ambiguous because "amount shown" could refer to either the "Mental and Nervous Disorder Limit" of $10,000, or the "Maximum Benefit Limit Per Covered Person" of $1 million. Therefore, she asserts, she should get the benefit of the ambiguity and her claim should be subject only to the higher limit. We agree with the district court that this argument is meritless. Several routes lead us to the same destination.

First, a natural reading of the "Exclusions and Limitations" applicable to "Mental and Nervous Disorders," including the "total liability" reference to page 3, would ineluctably lead a reasonable person to the "Mental or Nervous Disorder Limit" on that page (emphases added). Indeed, given the specific page reference and the symmetry of terms, we are hard pressed to fathom how a "more than casual reading," Godbout, 834 A.2d at 362, could lead to a different conclusion.

Next, if, as Hunt argues, the reference to "the amount shown on page 3" could reasonably be read to mean the $1 million "Maximum Benefit Limit," it would improperly require us to consider the "total liability" language in the Mental or Nervous Disorders Exclusion as unnecessary surplusage. The policy already provides that "amounts payable" "during the *covered person's* lifetime" will not exceed the $1 million Maximum Benefit Limit. If the larger "Maximum Benefit" limit applied to mental health benefits, there would be no need for reference to a specific "total liability" for Mental or Nervous Disorders. See Int'l Surplus Lines Ins. Co. v. Mfrs. & Merchs. Mut. Ins. Co., 661 A.2d 1192, 1195 (N.H. 1995) (holding that it is improper to presume policy language to be "mere surplus").

Finally, Hunt suggests an alternative reading: that the specific $10,000 limit is merely an annual limit, while the lifetime limit is $1 million. Once again, the plain language of

the policy militates against such a reading.  The two Limits at issue in this case are the only limits listed on the Policy Data Page ("page 3") that do not contain temporal parameters, such as "annual," "daily," and "per calendar year."  Therefore, they are more naturally treated equally, as lifetime limits.  Moreover, Hunt's proposed construction flies in the face of the plain meaning of such terms as "all losses" and "total liability" contained within the Mental and Nervous Disorders Exclusion.

Finding no ambiguity in the $10,000 limit for Mental or Nervous Disorders, we hold that summary judgment as to Count I was properly granted.

**B. Discrimination**

In Count II, Hunt alleges that the cap on mental or nervous disorders illegally discriminates because it treats policyholders with such disorders differently from those with physical ailments.  She asserts two statutory bases for this claim, each of which arises under New Hampshire's Unfair Insurance Trade Practices Law, RSA § 417:4.  First, she claims that Golden Rule violated § 417:4, VIII(b), which prohibits "any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any . . . contract of health insurance or in the benefits payable thereunder . . . ."  She also cites § 417:4, VIII(c), which bars "any unreasonable distinction or discrimination

between persons as to the policy, premiums, or rates charged for policies . . . or in any other manner whatever[.]" Golden Rule posits both procedural and substantive reasons to support the district court's ruling. Procedurally, it argues that Hunt's claim is barred because Chapter 417 does not provide a private right of action unless a claimant first gets a favorable ruling from the insurance commissioner.

The district court eschewed analysis of Golden Rule's procedural argument but found that Hunt's claim was substantively wanting. Addressing the procedural issue instead, we hold that Hunt may not pursue a private right of action. We do not reach the substantive issue. See Bukuras v. Mueller Grp., LLC., 592 F.3d 255, 261 (1st Cir. 2010) ("We may affirm summary judgment on any ground manifest in the record.").

Under RSA § 417:19, a consumer is "permit[ted]" to file a private action for damages after the insurance commissioner finds a violation of the trade practices law. Bell v. Liberty Mut. Ins. Co., 776 A.2d 1260, 1263 (N.H. 2001). Although the New Hampshire Supreme Court has not explicitly held that the commissioner's ruling is a prerequisite to a private action, the federal district court has so held, first in Shaheen v. Preferred Mut. Ins. Co., 668 F. Supp. 716, 718 (D.N.H. 1987), and more recently in Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2010 WL 2902251 (D.N.H. July 22, 2010).

Hunt concedes the point, but only to the extent that private suits for <u>damages</u> are proscribed by the statutory scheme. She asserts that her claim is not barred because it seeks declaratory judgment, pursuant to RSA § 491:22. A full and fair reading of the record, however, reveals that this argument is little more than a semantic end-run around a procedural hurdle that she has not surmounted. Her Complaint makes repeated reference to Golden Rule's alleged violations of Chapter 417, and her requested relief -- a declaration that the cap is an unenforceable unfair trade practice -- would be an empty victory if she were not able to recover the benefits in excess of the $10,000 cap. Moreover, to allow the claim to proceed would essentially usurp the insurance commissioner's powers under the law, as aggrieved plaintiffs would simply dress up their damages claims in the finery of a declaratory judgment action. <u>See</u>, <u>e.g.</u>, RSA §§ 417:5 (granting commissioner power to examine and investigate insurers), 417:6 (authorizing commissioner to conduct hearings), 417:7 (detailing hearing procedures), 417:10 (describing range of available punishment). If there is to be a declaration that Golden Rule has violated Chapter 417, it must first come from the New Hampshire insurance commissioner.

Hunt's final argument is that her cause of action is preserved by RSA § 417:5-a. That section indicates that the powers vested in the commissioner to determine whether insurers have

engaged in unfair or deceptive practices are "not exclusive or restrictive or intended to limit the powers of the commissioner or any court of review but . . . are in all respects cumulative of and supplemental to  . . . all other applicable New Hampshire statutes and common law."  We think that this section cannot support the weight that Hunt has placed upon it.  The clear import of the entire statutory scheme is that claims for unfair trade practices under RSA 417 begin with the commissioner, but other types of claims -- such as Hunt's breach of contract claim in Count I -- are not so restricted.  Indeed, § 417:5-a refers only to the powers of the commissioner, and is not suggestive of an unfettered private right of action.

As noted, the New Hampshire Supreme Court has not specifically ruled on the question before us.  In the absence of a specific holding, our task is "to predict what path the state court would most likely travel."  Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008).  "The primary purpose of [Chapter 417] is to regulate trade practices in the business of insurance and not to redress individual wrongs." Arouchon v. Whaland, 409 A.2d 1331, 1332-33 (N.H. 1979).  Our decision today is consistent with that principle.

We have reviewed appellant's remaining arguments and find them to be without merit.

## IV.

The judgment of the district court is **affirmed.**