STRATFORD SCHOOL DISTRICT, S.A.U. # 58, Plaintiff, Appellee,

v.

EMPLOYERS REINSURANCE CORPORATION, Defendant, Appellant.

No. 98–1194.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1998.

Decided Dec. 17, 1998.

Charles W. Grau, with whom Upton, Sanders & Smith was on brief for appellant.

Bruce W. Felmly, with whom Jeanmarie Papelian and McLane, Graf, Raulerson & Middleton were on brief for appellee.

Before COFFIN and CAMPBELL, Senior Circuit Judges, and GERTNER,* U.S. District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Employers Reinsurance Corporation ("Employers") appeals from the district court's grant of attorneys' fees and costs against Employers in favor of its insured, Stratford School District ("Stratford"). Stratford incurred these fees and costs in the course of its successful prosecution of a declaratory judgment action against Employers and several other insurance companies. The issue before us is whether Employers' insurance contract required it to reimburse Stratford for them. Employers was contractually bound to pay the fees and costs only if Stratford had no "other insurance," and it is Employers' contention that Stratford had, in fact, two other sources of insurance. The district court ruled that neither source of funds available to Stratford was "insurance" within the meaning of Employers' contract. We remand for additional findings.

## I. BACKGROUND

In January, 1994, a high school student and her father sued Stratford in the New Hampshire state court ("the underlying action"), claiming that Stratford was liable for sexual misconduct against the student by one of Stratford's teachers. Stratford gave notice of the suit to its five insurers, Employers, Coregis/International Insurance Company ("Coregis"), National Union Insurance Company ("National Union"), New Hampshire Indemnity Company ("New Hampshire Indemnity"), and Reliance Insurance Company ("Reliance"). Each of the insurers denied coverage.

On September 2, 1994, Stratford sued the insurers in New Hampshire state court ("the declaratory judgment action"), seeking a declaration that they were obligated to defend and indemnify Stratford in the underlying action. The insurers removed the suit to federal district court. The district court subsequently granted summary judgment in favor of National Union, New Hampshire Indemnity, and Reliance. Then, in June, 1995, Stratford and Coregis entered a stipulation that effectively settled Stratford's claim against Coregis. Under the stipulation, Coregis agreed to provide a defense and coverage, subject to a so-called $75,000 "self-insured retention" in Stratford's Coregis policy.

Stratford had received its insurance policy with Coregis through its membership in the New Hampshire School Boards Insurance Trust ("the Insurance Trust"). The Insurance Trust is a compendium of participating school districts from across the state that participate as members, and the Insurance Trust purchases insurance for them and otherwise tends to their insurance needs. After Stratford and Coregis entered their stipulation, the Insurance Trust amended the terms of its obligations to Stratford via an "Endorsement." The Endorsement stated:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. It is understood and agreed that the $75,000 Property deductible for [Stratford] under [the Coregis policy] is reduced to $1000, and that the New Hampshire School Boards Insurance Trust will pay any covered claim of less than $75,000 and greater than $1000 for [Stratford].

Coregis' stipulation with Stratford left Employers as the sole remaining defendant in Stratford's declaratory judgment suit. On May 3, 1996, the district court granted summary judgment in favor of Stratford and

* Of the District of Massachusetts, sitting by designation.

against Employers. As the prevailing party, Stratford then moved for the award of its attorneys' fees and costs against Employers. Stratford sought the fees and costs it had incurred both in the underlying action and in the declaratory judgment action. Employers lodged numerous objections to the motion (most of which are not relevant to this appeal), and the district court appointed a special master to hear evidence and issue a report and recommendation.

On December 8, 1997, the special master ultimately recommended that Stratford was entitled overall to $111,973.51 in attorneys' fees for the underlying case, $41,560.13 in attorneys' fees for the declaratory judgment action, and $9,000 in attorneys' fees for preparing the motion. The special master further recommended that, pursuant to Coregis' stipulation, both Coregis and Employers were partially responsible for these payments. The special master concluded that Employers was obligated to pay $101,880.65 for the underlying case, $37,638.63 for the declaratory judgment action, and $9,000 for the motion.

On January 21, 1998, the district court adopted the special master's report and recommendation in its entirety. Employers appeals, objecting only to the district court's ruling regarding fees for the declaratory judgment action. The sole issue in this appeal is whether the district court correctly interpreted a provision in the contract between Stratford and Employers as requiring Employers to pay for a portion of Stratford's attorneys' fees in the declaratory judgment action. That provision, Section V of Employer's insurance contract, provides:

> OTHER INSURANCE. If, but for the insurance afforded by this policy, the insured would have other insurance against a loss otherwise covered hereby, the insurance afforded by this policy shall be excess over such other insurance.

The crux of Employers' argument is that Section V absolves it from paying Stratford's attorneys' fees because Stratford had two types of "other insurance"—the stipulation with Coregis and the Endorsement from the Insurance Trust. The district court disagreed, adopting in its entirety the report and recommendation of the special master, who had concluded that neither the Coregis policy to the extent of the $75,000 retention, nor the Insurance Trust's Endorsement paying most of that retention, constituted "other insurance."

## II. DISCUSSION

### A. Coregis' Self–Insurance Policy

■ Employers argues that Stratford's $75,000 self-insurance retention, for which Coregis assumed no liability, was nevertheless a species of "other insurance". Stratford makes the rejoinder that its retention of responsibility to pay for claims against it below the limit of $75,000 was no "insurance" at all. It seems obvious that Stratford wins this argument.

New Hampshire law governs this diversity action. The New Hampshire courts have not addressed whether retained self-insurance under a deductible, or in some analogous situation, constitutes "insurance" for the purposes of a separate policy's "other insurance" clause. We must predict, therefore, how the Supreme Court of New Hampshire would resolve this issue, relying on guidance from analogous decisions in other states and other legal authorities. *See Moores v. Greenberg*, 834 F.2d 1105, 1107 (1st Cir.1987).

Black's Law Dictionary 802 (6th ed.1990) defines "insurance" as

> [a] contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. The party agreeing to make the compensation is usually called the "insurer" or "underwriter;" the other, the "insured" or "assured;" the agreed consideration, the "premium;" the written contract, a "policy;" the events insured against, "risks" or "perils;" and the subject, right, or interest to be protected, the "insurable interest."

In contrast, Black's Law Dictionary defines "self insurance" as a "[p]lan in which the insured (e.g., business) places aside in a fund sufficient sums to cover liability losses that may be sustained. Commonly, under such plan the business will self-insure itself up to

a certain amount and then carry regular liability insurance to cover any excesses." *Id.* at 806.

The difference between these two concepts—"insurance" and "self-insurance"—is self-evident. "[T]he plain and ordinary meaning of the term 'insurance' contemplates a written contract—an insurance policy—issued by one individual or entity to compensate another for loss in exchange for a premium. . . . [U]nder a self-insurance scheme, no written insurance policy is issued by another individual or entity nor is a premium paid because obviously a business which is self-insured does not need to pay itself to protect against its own risk of loss." *Wake County Hosp. System, Inc. v. National Casualty Co.,* 804 F.Supp. 768, 775 (E.D.N.C.1992), *aff'd,* 996 F.2d 1213 (4th Cir.1993). This view has been adopted by a clear majority of courts confronted with the question. *See id.* at 774 (collecting cases from New York, Texas, Missouri, Indiana, California, Iowa, Arizona, Florida, Pennsylvania, Alaska, and Ohio). The distinction applies equally within one insuring agreement, the terms of which provide insurance coverage only above a stated amount, therefore requiring the insurer to self-insure, or look to other sources, for the lesser sum.[1] Here, to be sure, Stratford did not literally pay from its own pocket, being covered in large measure by the Insurance Trust under its Endorsement, *see infra,* but its insurer, Coregis, lacked any responsibility within the $75,000 limits, and, as discussed below, the Insurance Trust's contribution appears not to have been insurance either.

We hold that Stratford's $75,000 so-called self-insured retention under its agreement

with Coregis was not "other insurance" within the context of its policy with Employers.

**B. The Insurance Trust's Endorsement**

Employers contends that the Insurance Trust's agreed payment of all except $1,000 of the $75,000 Coregis deductible under the Insurance Trust's Endorsement constituted "other insurance."[2] This presents a knottier question than the previous one.

■ We begin by assuming for purposes of this section of the opinion, against Employers' objection, that the Insurance Trust was at all relevant times a pooled risk management program ("PRMP") established under N.H.Rev.Stat. Ann. § 5–B:5. The special master found that the Insurance Trust was a PRMP and the district court adopted his report. We shall return to Employers' objection to this characterization in the concluding section of this opinion, *see infra;* but assuming, *arguendo,* as determined below, that the Insurance Trust was a PRMP, we hold that the financial assistance it furnished Stratford in paying claims within the $75,000 Coregis deductible was not "other insurance."

New Hampshire law specifically declares that PRMPs are not insurers. N.H. R.S.A. § 5–B:6(I) states:

> Any pooled risk management program meeting the standards required under this chapter is not an insurance company, reciprocal insurer, or insurer under the laws of this state, and administration of any activities of the plan shall not constitute doing an insurance business for purposes of regulation or taxation.

---

1. Employers argues that Stratford should assume the burdens of deciding to insure itself via the self-retention provision because it accepted the benefit of Employers' lowered premiums. But the premium has little to do with whether the retention was itself genuine insurance. Employers presented no evidence that the parties intended some specialized definition of "other insurance" that would encompass amounts that Stratford was left to pay out of its own pocket. In the absence of such evidence, we apply the ordinary meaning of the term. *See, e.g., James L. Miniter Ins. Agency, Inc. v. Ohio Indemnity Co.,* 112 F.3d 1240, 1246 (1st Cir.1997) ("We must give common words appearing in written contracts their plain and ordinary meaning un-

less manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the contract.") (internal quotation marks omitted).

2. While the record provides scant detail as to the duties and organization of the Insurance Trust, it appears undisputed that the Insurance Trust is comprised of participating school districts from across the State of New Hampshire that participate as members, and that its purpose is to purchase insurance for members and perhaps to furnish some form of internal protection and self-insurance.

The New Hampshire courts have not considered whether, given the above statutory exception, the benefits paid by a PRMP should nonetheless be considered as "insurance" for the purposes of an insurer's "other insurance" clause.[3] We think it likely that were the Supreme Court of New Hampshire presented with the question, it would answer in the negative.

Employers claims that the limiting language, "for purposes of regulation or taxation," implies that the legislature intended PRMPs to be treated as insurers for all purposes *except* "regulation or taxation." However, while presumably the New Hampshire statutory law on PRMPs would not prohibit private parties from expressly contracting to treat pooled risk agreements as a form of "other insurance," it certainly suggests that the products of PRMPs are outside of the ordinary meaning of the undefined term "insurance" in New Hampshire. The first clause of the statute declares without qualification that a PRMP is not an insurance company nor an insurer under the laws of the state, while the second clause says that the administration of any activities of a PRMP shall not constitute doing an insurance business for state regulation and tax purposes. As the statute places PRMPs beyond the ken of state insurance, it behooves insurers and others who wish nonetheless to include PRMPs and their products under the term "insurance" to so provide by apt language.

Employers seeks to minimize the significance of the statute by contending that the term "regulation" refers only to promulgated administrative regulations. The ordinary meaning of "regulation," however, is "a rule or order prescribed for management or government." *See* Black's Law Dictionary at 1286. That the legislature intended this more expansive definition of "regulation" is clear from the statute's preamble. There, the legislature stated its findings that

insurance and risk management is essential to the proper functioning of political subdivisions; that risk management can best be achieved through purchase of traditional insurance or by participation in pooled risk management programs established for the benefit of political subdivisions; ... that the resources of political subdivisions are presently burdened by the securing of insurance protection through standard carriers; and that pooled risk management programs which meet the standards established by this chapter should not be subject to insurance regulation and taxation by the state.

N.H. R.S.A. § 5–B:1. This section indicates that the legislature sought to facilitate risk protection coverage for political subdivisions by granting PRMPs special status, and treating them differently from providers of traditional insurance.

Employers nonetheless urges that the benefits provided by PRMPs operate like insurance, hence should be treated the same. PRMPs obviously do have insurance-like qualities. In N.H. R.S.A. § 5–B:2(IV), the legislature defined "risk management" as

the defense of claims and indemnification for losses arising out of the ownership, maintenance, and operation of real or personal property and the acts or omissions of officials, employees, and agents; the provision of loss prevention services including, but not limited to, inspections of property and the training of personnel; and the investigation, evaluation, and settlement of claims by and against political subdivisions.

The above functions are often carried on by insurance companies (though also by self-insurers). But while the program may have some insurer-like aspects, which is presumably why statutory exemption from insurance regulation was deemed necessary, the legislature has expressly removed it from the cate-

---

**3.** We reject Employers' contention that the Supreme Court of New Hampshire impliedly decided that the benefits provided by PRMPs constitute insurance in *Town of Londonderry v. New Hampshire Municipal Ass'n Property Liab. Ins. Trust*, 140 N.H. 440, 667 A.2d 1024 (N.H.1995). Employers makes much of the fact that the *Town of Londonderry* court referred to an insurance

trust as an "insurance company" and its policy as an "insurance policy." However, we read these statements as little more than casual references. The *Town of Londonderry* court never mentioned whether the insurance trust was a PRMP, and indeed that was not an issue in the case.

gory of insurance. By so doing, it abolished any normal expectation in New Hampshire that the undefined term "insurance" would, without more, include PRMPs.

Had Employers wanted its insurance obligation to be excess to funds that Stratford might receive from a third party such as the Insurance Trust's pooled arrangement, Employers could and should have so specified in the policy rather than relying on the term "insurance." *See Trombly v. Blue Cross/ Blue Shield of New Hampshire–Vermont,* 120 N.H. 764, 423 A.2d 980 (N.H.1980) (holding that ambiguities in insurance contracts are construed against the drafter); *see also RCI Northeast Serv. Division v. Boston Edison Co.,* 822 F.2d 199, 205 (1st Cir.1987)("In the arena of commerce, it avails us little to stand language on its ear in an effort to rescue a firm from a sinkhole of its own design. It is no appropriate part of judicial business to rewrite contracts freely entered into between sophisticated business entities.").

Assuming, therefore, that the Insurance Trust was a PRMP, we hold that—as the Insurance Trust's Endorsement did not constitute "insurance" as that term is usually understood under New Hampshire law—it was not "other insurance" under Stratford's contract with Employers.

### C. Whether the Insurance Trust was a PRMP

Employers argues that the record before the special master, whose report and findings were confirmed by the district court, does not support the master's finding that the Insurance Trust was a PRMP within the meaning of N.H.Rev.Stat. Ann. § 5–B:5. Stratford first raised the defense of the Insurance Trust's PRMP status in its supplemental brief filed after the special master's hearing. Previously, Stratford had simply argued in more general terms that the Insurance Trust's Endorsement was not "other insurance." As soon as Stratford raised in its post-hearing brief the issue of PRMP status, Employers objected in its own brief on the ground that Stratford had not tendered any evidence to confirm that the Insurance Trust was, in fact, a PRMP.

Notwithstanding this objection, the special master determined in his report that "New Hampshire School Board's [sic] Insurance Trust is a pooled risk management program organized under N.H.Rev.Stat. Ann. 5–B (1988)." Employers presented a similar objection to the district court, which nonetheless confirmed the special master's report without comment on the point.

■ Our review of the record supports Employers' contention that there is insufficient record support from which to find that the Insurance Trust is a PRMP. About all that appears on this score is the parties' apparent acceptance that the Insurance Trust was some kind of entity comprised of participating school districts (Stratford being one) formed for the purpose of acquiring and managing insurance for its member districts. While this suggests PRMP status, it falls short of establishing it. Neither Stratford nor anyone else put into evidence the Insurance Trust's charter, by-laws, and any other necessary papers from which it could be determined that the Insurance Trust met the legal requirements of a PRMP as these are set out in the New Hampshire statute granting such entities exemption from insurer status. *See* N.H.Rev.Stat. Ann. § 5–B:5. Specifically, nothing showed, as the statute requires, that the Insurance Trust (1) is organized under New Hampshire law; (2) is governed by a board of elected or appointed public officials; (3) returns all earnings and surpluses; (4) prepares and files an annual audit; (5) is governed by written by-laws; and (6) prepares an annual actuarial evaluation. *See id.* Nor was alternative evidence of PRMP status tendered, for example, that some state official qualified to do so had certified that the Insurance Trust was a PRMP. And, contrary to Stratford's present contention, Employers never waived its present objection on this score. Rather, as soon as Stratford raised the argument that the Insurance Trust was a PRMP, hence could not be an insurer, Employers objected that the record did not support a finding of PRMP status.

■ On the other hand, common sense, buoyed by the little we can glean from the record, suggests that the Insurance Trust is

probably a PRMP. Employers, indeed, has never claimed that the Insurance Trust is not a PRMP but simply says that Stratford failed to meet its burden of presenting sufficient formal proof for the special master and the district court to find that it is. The special master and the district court may have concluded that the Insurance Trust's status was self-evident and that Stratford, a school district member of the Insurance Trust, would surely know whether the Insurance Trust was a PRMP, and let matters go at that. Still, while Employers' insistence on proof may seem technical, it was Stratford's responsibility to have offered evidence sufficient to establish PRMP status if it wished to assert such status over Employers' objection, as a reason the Endorsement could not be insurance. While the general sense we get from the record is that PRMP status was assumed as never being seriously in doubt, the district court erred in overlooking the absence of formal proof when it confirmed the special master's finding of PRMP status over Employers' specific objection on this score.[4]

We think, however, that to reverse on the basis of this deficiency would be to elevate form over substance, given the murkiness of the situation after the special master's hearing and the ease with which the deficiency in proof can even now be corrected. We accordingly remand rather than reverse.

We *vacate* the judgment below and *remand* to the district court *with instructions* to reopen the record to the extent necessary to determine if the Insurance Trust was at relevant times a New Hampshire PRMP. If the district court finds, on the basis of suitable proof, that the Insurance Trust was a New Hampshire PRMP, the court is instructed to enter judgment for Stratford consistent with this opinion. If, however, adequate evidence that the Insurance Trust is a New Hampshire PRMP is not produced, causing the district court to find that Stratford has not met its burden in this regard, the court will need to reconsider the nature of the Insurance Trust's Endorsement and deter-

mine anew whether or not it constitutes 'other insurance' under Stratford's contract with Employers. In such circumstances, it may conduct such future proceedings, and make such further findings and rulings and judgment in the cause, as it deems appropriate.

*So ordered. Each party to assume its own costs.*

---

4. While the hearing before the special master had ended when the issue of PRMP status first surfaced, Stratford could have tendered a copy of the Insurance Trust's relevant charter and by-law documents, or the like, and moved for the master or district court to reopen the record to receive them. Stratford did not do so.