# United States Court of Appeals
## For the First Circuit

No. 17-1442

CAROL DIANE COOPER, and JOHN SCOTT COOPER,
As Personal Representative of the Estate of
Peter M. Cooper, Jr., Deceased,

Plaintiffs, Appellees,

v.

ALYSSA JANE D'AMORE, f/k/a/ Alyssa J. Cooper,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Robert J. O'Regan, with whom Burns & Levinson LLP was on brief, for appellant.
Keith P. Carroll, with whom Andrew Nathanson and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. were on brief, for appellees.

February 2, 2018

**STAHL**, **Circuit Judge**.  In 2003, Peter M. Cooper, Jr. ("decedent") established an Individual Retirement Account ("IRA") with Mesirow Financial ("Mesirow IRA"), and designated his then wife, Alyssa Jane D'Amore ("D'Amore"), as beneficiary.  In 2006, the couple divorced, but decedent never revoked the beneficiary designation.  In 2011, decedent transferred the majority of his Mesirow IRA assets to a TD Ameritrade IRA.  In 2012, upon decedent's death, Mesirow distributed the assets remaining in the Mesirow IRA to D'Amore.  Carol Diane Cooper, the mother and primary beneficiary of decedent, and John S. Cooper, the executor of decedent's estate, (collectively "the Coopers") sued D'Amore, claiming that the Mesirow assets should have been distributed to decedent's estate.  The district court ultimately granted summary judgment for the Coopers.

After careful consideration, we conclude that the district court improperly granted summary judgment for the Coopers because decedent's transfer did not terminate the Mesirow IRA.

**I. Background**

In 2003, decedent, an investment executive/bond trader at Mesirow Financial Inc., established a Mesirow IRA through his employer.  The Mesirow Custodial Agreement governed the IRA.[1]  At

_____

[1] The IRA was originally governed by a Trust Agreement with Delaware Charter Trust.  In 2010, Mesirow took over as the custodian and the Mesirow Custodial Agreement subsequently

the time, decedent was married to D'Amore and designated her as the beneficiary. Decedent managed multiple financial investments for himself as well as other family members. In 2006, decedent and D'Amore divorced and entered into a Martial Settlement Agreement which provided, in part, that "[e]ach party shall continue to own as his or her own separate property any Individual Retirement Account (IRA), pension or retirement plan in his or her name, and each does hereby waive any claim to such account of the other." Notwithstanding the Martial Settlement Agreement, decedent did not revoke the beneficiary designation for the Mesirow IRA.

On August 18, 2011, decedent completed a TD Ameritrade "Account Transfer Form" in order to transfer his assets from the Mesirow IRA to a TD Ameritrade IRA. One provision in the form stated: "This is a total transfer from a brokerage account." Decedent checked the box next to this provision. Another provision in the form, entitled "Transfer Agreement," provided: "Unless otherwise indicated, I authorize the Transferor to liquidate any nontransferable proprietary money market fund assets and mutual fund assets that are part of my account and to transfer the resulting credit balance to my account with TD Ameritrade." Decedent did not initial this portion of the form.

---

governed the IRA. This change had no effect on the beneficiary designation.

On September 7, 2011, decedent received a letter from Mesirow Financial, entitled "Non-Deliverable Assets(s)." The letter provided that certain assets in decedent's account were "not transferable." The letter also provided that if a "request is not received within 60 days your account will be re-established." On September 24, 2011, decedent sent an email to a financial advisor at Mesirow Financial, asking if he could keep the nontransferable assets in the account.

Decedent continued to receive financial statements for the Mesirow IRA until he died. Decedent's Mesirow statements post-transfer included the same account number listed on his statements pre-transfer. Unlike the earlier statements which listed D'Amore as the primary beneficiary, the statements post-transfer indicated that the primary beneficiary designation was "not provided."

On July 21, 2012, decedent died. Thereafter, Mesirow distributed the assets that remained in the Mesirow IRA to D'Amore pursuant to the beneficiary designation.

In October of 2014, the Coopers sued D'Amore, seeking to recover the assets distributed by Mesirow to D'Amore. The parties filed cross-motions for summary judgment. On November 10, 2015, the district court granted summary judgment for the Coopers, finding that upon divorce, D'Amore's beneficiary designation was revoked pursuant to the Illinois Trusts and Dissolutions of Marriage Act. Cooper v. D'Amore, No. CV 14-14041-RGS, 2015 WL

- 4 -

6962834, at *4 (D. Mass. Nov. 10, 2015). On November 20, 2015, D'Amore filed a motion for reconsideration. Thereafter, the court determined that its summary judgment decision was improper because Delaware law, not Illinois law, governed the IRA. On December 4, 2015, the court imposed sanctions on the Coopers' counsel for the failure to turn over an authenticated copy of the Delaware Charter Trust document, and granted D'Amore's motion for summary judgment.

The Coopers appealed and this Court vacated the district court's entry of summary judgment on behalf of D'Amore because it found that the Delaware Charter IRA Trust Agreement was not in effect at the time the assets were distributed in 2012. Cooper v. D'Amore, 663 F. App'x 1, 2-3 (1st Cir. 2016).[2]

On remand, the parties again moved for summary judgment. This time, the district court granted summary judgment for the Coopers. The court explained that from 2006, when the couple divorced, until August 2011, when the decedent transferred his assets, D'Amore was the beneficiary, but when decedent requested a transfer of all of his assets in 2011, the beneficiary designation was automatically revoked and the account terminated.

---

[2] The Court nonetheless found that the district court did not abuse its discretion when it sanctioned plaintiffs' counsel for "misleading the court during summary judgment by failing to produce or discuss a document." Cooper, 663 F. App'x at 2-3 (1st Cir. 2016).

- 5 -

Cooper v. D'Amore, No. CV 14-14041-RGS, 2017 WL 74279, at \*4-\*5 (D. Mass. Jan. 6, 2017).  This timely appeal followed.

## II. Analysis

We review de novo a district court's grant of summary judgment.  Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013).  "Where the parties file cross-motions for summary judgment, we employ the same standard of review, but view each motion separately, drawing all inferences in favor of the nonmoving party."  Fadili v. Deutsche Bank Nat'l. Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014).

Before considering the merits of the appeal, we first address the Coopers' contention that D'Amore failed to properly raise her arguments before the district court on summary judgment.[3] "[I]t is a virtually ironclad rule that a party may not advance for the first time on appeal either a new argument or an old argument that depends on a new factual predicate."  Cochran v. Quest Software, Inc., 328 F.3d 1, 11–12 (1st Cir. 2003).  We find that D'Amore argued before the district court that the Mesirow IRA never terminated.[4]  Because that issue is dispositive, we need not

---

[3] The Coopers claim that "[a]lthough she could have done so earlier, [D'Amore] brought [her] arguments [that she now makes on appeal] to the District Court's attention only in the papers supporting her Motion for Reconsideration of the Court's grant of summary judgment to the Coopers."

[4] In Defendant's Renewed Motion for Summary Judgment and Incorporated Memorandum of Law, D'Amore argued that "[b]ecause the

consider whether D'Amore's other arguments raised on appeal were properly preserved before the district court.

In granting summary judgment for the Coopers, the district court determined that "because Peter Cooper's written direction for a total asset transfer [in 2011] terminated the [Mesirow] Custodial Agreement, it also terminated the beneficiary designation associated with the custodial account." Cooper, 2017 WL 74279, at *3. The court noted that "the [Mesirow] Custodial Agreement required only the delivery of an instruction for a transfer. It says nothing about the execution of the instruction." Id. at *3 n.2. As such, "in the absence of a continuing beneficiary designation, the Mesirow IRA assets became part of Peter Cooper's estate upon his death." Id. at *3.

On appeal, all parties agree, as does this Court, that the Mesirow Custodial Agreement was governed by Illinois law at the time of decedent's transfer request in 2011. Further, all parties agree that the beneficiary designation was never revoked prior to the transfer request. Thus, the only question to resolve on appeal is whether decedent's transfer request resulted in the termination of the Mesirow IRA in a manner that revoked the designation of D'Amore as beneficiary before decedent died.

---

transfer instructions did not direct that all assets were to be transferred . . . it could not have terminated the account."

Pursuant to Illinois law, "[t]he primary objective in construing a contract is to give effect to the intent of the parties." Gallagher v. Lenart, 874 N.E.2d 43, 58 (Ill. 2007). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." Id.; see also Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999) ("[A] court initially looks to the language of a contract alone . . . . If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence."). "If [however] the language of the contract is susceptible to more than one meaning, it is ambiguous," and in that case, "a court may consider extrinsic evidence to ascertain the parties' intent." Gallagher, 874 N.E.2d at 58.

The Mesirow Custodial Agreement, in Article XI, Termination of Account, provides as follows:

> This Agreement shall terminate upon the distribution of all of the assets of the custodial account in accordance with Article IV, or, if earlier, when the Depositor delivers written direction to the Custodian to transfer *all assets of the custodial account* to a successor trustee, custodian of another retirement plan or directly to the Depositor. Upon completion of such distribution, the Custodian shall be relieved from all further liability with respect to all amounts so paid and shall be fully acquitted and discharged from its responsibilities hereunder.

The Coopers claim that pursuant to Article XI, "while the Custodial Agreement *could* terminate upon distribution of all the assets, . . . the contract would in fact terminate earlier" when the "Depositor delivers written direction to transfer all assets." D'Amore argues that the "Mesirow Custodial Agreement could not have 'terminated' while any securities remained at Mesirow because by its terms, the Mesirow Custodial Agreement continued in force until the entire account was distributed."

The plain language of Article XI is clear. Setting aside the distribution of assets provision, in order to terminate the account via a request to transfer, there must be a request for a transfer of "*all assets*."

An IRA is composed of a variety of assets. Some of the assets may not be transferable in their current form. In order to transfer nontransferable assets, a depositor must sell the nontransferable security and transfer the cash.

In providing that a depositor must request a transfer of all assets, Article XI does not distinguish between transferable and nontransferable assets. The only reasonable construction of this clause is that a request to transfer all assets must be precisely that: a request to transfer the transferable assets as well as the nontransferable ones. Had the contract meant to provide otherwise, it could have stated that a transfer of all

- 9 -

assets means the transfer of only those assets that are transferable.

In completing his transfer request, decedent had the opportunity to transfer all of his assets out of the Mesirow account, but he chose to direct a transfer of only those assets that were transferable. Were the Court to find that decedent provided a request to transfer "all assets" by only checking the one box on the TD Ameritrade Form, the rest of the form, specifically the Transfer Agreement section which required decedent's initials, would be rendered meaningless. Decedent is assumed to have known that certain assets in the IRA were transferable, while others were nontransferable in their current form. See Hawkins v. Capital Fitness, Inc., 29 N.E.3d 442, 446 (Ill. App. Ct. 2015) ("[T]he act of signing legally signifies that the individual had an opportunity to become familiar with and comprehend the terms of the document he or she signed."). If decedent wanted to direct a transfer of "all assets," he had to authorize a change of the nontransferable assets so that they could be transferred. Rather than doing that, however, decedent chose to transfer only those assets that were transferable. Thereafter, his agreement with Mesirow continued for the remaining nontransferable assets in the account.

And if there were any doubt about whether decedent wanted the nontransferable assets to be sold and transferred, his

communications with Mesirow on September 7 and 24, 2011 (ten months before his death) make clear that he wanted to keep the account open. Simply put, there is no doubt that the Mesirow account remained in place on the day decedent died.

While we acknowledge that the Mesirow IRA statements post-transfer failed to list D'Amore as the beneficiary, the statements simply stated that the beneficiary was "not provided." This does not establish that the beneficiary designation was revoked. Furthermore, the Plaintiffs' basis for their claim is that when the Mesirow IRA terminated, D'Amore's beneficiary designation was revoked. Because we find that the account did not terminate, the Coopers' argument that the beneficiary designation was revoked by account termination necessarily fails.

### III. Conclusion

For these reasons, we reverse the grant of summary judgment for the Coopers. A request to transfer all assets was never made; therefore, the beneficiary designation was never revoked and D'Amore was entitled to the remaining assets in the account upon decedent's death. Because this issue is determinative, and there are no other material facts in dispute, we remand the case to the district court with directions to enter summary judgment for D'Amore.