# United States Court of Appeals
## For the First Circuit

Nos. 18-1588, 18-1593

SCOTTSDALE INSURANCE COMPANY,

Plaintiff, Appellee/Cross-Appellant,

v.

UNITED RENTALS (NORTH AMERICA), INC.,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Selya, Boudin,
Circuit Judges.

Barbara A. O'Donnell and David E. Schroeder, with whom Sulloway & Hollis, P.L.L.C and Tribler Orpett & Meyer, P.C. were on brief, for appellant/cross-appellee.
Gary S. Kull, with whom Joanna L. Young, Kennedys CMK, LLP, Bradford N. Louison, and Louison Costello Condon & Pfaff, LLP were on brief, for appellee/cross-appellant.

October 2, 2020

**BOUDIN, Circuit Judge**. The present appeals concern an insurance coverage dispute stemming from a personal injury lawsuit. On June 22, 2007, Gomes Services, Inc. ("Gomes") contracted with United Rentals (North America), Inc. ("United Rentals") to rent an electric boom lift. Gomes used that lift at a trade show in Rhode Island, and, four days later, while operated by a Gomes employee, the lift struck and injured Guy Ayotte ("Ayotte"), a trade show attendee.

Ayotte and his wife sued United Rentals, Gomes, and others in Rhode Island state court asserting one count of vicarious liability against United Rentals for Gomes' negligence in operating the lift and two counts of direct liability for United Rentals' own negligence in maintaining the lift and renting the lift to Gomes. Ayotte ex rel. Ayotte v. Perez, C.A. No. 10-2164 (R.I. Super. Ct., amended complaint filed Mar. 11, 2011) ("the Ayotte Action"). The gist was that the lift's "travel alarm" failed to emit any audible sound to warn Ayotte that he was about to be run over by the lift.

At the time of the accident, United Rentals was insured by ACE American Insurance Company ("ACE") under two relevant policies, the ACE CGL Policy and the ACE Ultimate Net Loss Policy, described below, and Gomes was insured by Scottsdale Insurance Company ("Scottsdale") under the Scottsdale Policy. The Scottsdale Policy extended coverage to any party that Gomes was

- 2 -

required by written contract to add as an "additional insured." The rental contract between Gomes and United Rentals obligated Gomes to carry adequate liability insurance and, upon request, to supply United Rentals with "proof of such insurance" by a certificate of insurance "naming United [Rentals] as loss payee and additional insured."  Joint Record Appendix ("JRA") at 95.

On August 24, 2011, United Rentals requested that Scottsdale defend and indemnify United Rentals, as an additional insured, against the claims raised in the Ayotte Action.  After correspondence between Scottsdale and United Rentals--including a September 25, 2012 letter that described United Rentals as an additional insured--the parties sought a declaratory judgment in federal court on Scottsdale's duty to defend and indemnify United Rentals in the Ayotte Action.

On December 23, 2015, the Massachusetts district court held, on summary judgment, that United Rentals was entitled to defense costs from Scottsdale as an additional insured under the Scottsdale Policy.  The court declined to rule on Scottsdale's duty to indemnify United Rentals because the issue was not yet ripe.  After the Ayotte Action settled, Scottsdale and United Rentals again cross-moved for summary judgment on Scottsdale's duty to indemnify.  On March 30, 2018, the district court held that the Scottsdale Policy affords additional insured coverage to United Rentals for both its direct and vicarious liability in the

Ayotte Action but that this coverage was excess above United Rentals' own coverage under the ACE CGL Policy.

Both parties now appeal. Scottsdale challenges the district court's findings that United Rentals qualifies as an additional insured under the Scottsdale Policy and that additional insured coverage extends to both United Rentals' direct liability and vicarious liability for Gomes' acts. United Rentals appeals from the district court's priority-of-coverage determination.

A grant or denial of a motion for summary judgment is reviewed de novo, Cooper v. D'Amore, 881 F.3d 247, 249 (1st Cir. 2018), and may be affirmed on any available ground, Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011). On cross-motions for summary judgment, each motion is reviewed separately, drawing facts and inferences in favor of the non-moving party. Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014). As the parties agree that Massachusetts law governs in this diversity case and there is "at least a 'reasonable relation'" between the dispute and Massachusetts, we "forego an independent analysis of the choice-of-law issue and apply Massachusetts law." Bird v. Centennial Ins. Co., 11 F.3d 228, 231 n.5 (1st Cir. 1993) (citing Com. Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1048 n.1 (1st Cir. 1993)).

This set of appeals presents three different questions, mainly difficult because of the multiple documents engineered in

the obscure and parochial jargon most familiar to the rest of us from reading the waivers and acceptances on cell phones (for which only a brief pause is allowed to digest fifty pages of jargon, more sinister because seemingly made obscure).  The questions are addressed in turn.

Additional Insured Status.  Scottsdale contests the district court's December 23, 2015 ruling that United Rentals is an additional insured under the Scottsdale Policy.  First, United Rentals says that Scottsdale waived the right to challenge this ruling.  On April 19, 2018, the parties entered into a partial settlement agreement (the "Settlement Agreement"), paragraph four of which provides in part:

> In exchange for United Rentals agreement not to re-file its Fee Petition and to waive all claims for attorney's fees, costs and expenses incurred in defense of the Ayotte Lawsuit and the Coverage Action, over and above Scottsdale's $510,000.00 payment, Scottsdale agrees to forego any appeal of the court's Memorandum and Order dated December 23, 2015 granting United Rentals' motion for partial summary judgment on Scottsdale's duty to defend and shall release any claim Scottsdale might have to recover the $510,000.00 paid to United Rentals under the terms of this Partial Settlement Agreement and Release.

Supplemental Appendix ("SA") at 3 (emphasis added).

A party who agrees in writing to settle a lawsuit in return for certain obligations has a "right to expect a fairly literal interpretation of the bargain that was struck and approved by the court," Brown v. Gillette Co., 723 F.2d 192, 192-93 (1st Cir. 1983) (internal citations omitted), and where the wording is unambiguous, its terms will be strictly enforced, see, e.g., Alison H. v. Byard, 163 F.3d 2, 5 (1st Cir. 1998).

Here, paragraph four contains two separate promises from Scottsdale: (1) to "forego any appeal" of the district court's December 23, 2015 decision; and (2) to release any claim to recover the monies paid under the Settlement Agreement. Because Scottsdale's challenge to United Rentals' status as additional insured violates the first promise, this challenge is barred.

Scope of Additional Insured Coverage. Scottsdale also appeals from the district court's March 30, 2018 ruling that Scottsdale must indemnify United Rentals for the settlement costs of resolving United Rentals' direct and vicarious liability in the Ayotte Action. Scottsdale insists that the Scottsdale Policy only covers United Rentals' vicarious liability for Gomes' negligence and that Ayotte had no viable vicarious liability claim against United Rentals under Rhode Island law.

The Scottsdale Policy's Additional Insured Endorsement ("AI Endorsement") provides additional insured coverage "only with respect to liability for 'bodily injury,' . . . caused, in whole

- 6 -

or in part, by [Gomes'] acts or omissions[] or [t]he acts or omissions of those acting on [Gomes'] behalf." JRA at 487. The parties' dispute centers on the phrase "caused, in whole or in part, by" and whether it modifies the word "liability" or the words "bodily injury."

Scottsdale argues that the AI Endorsement insures United Rentals against <u>liability</u> "caused, in whole or in part, by" Gomes--such that only United Rentals' vicarious liability for Gomes' negligence is covered--whereas United Rentals contends that coverage extends when <u>bodily injury</u> is "caused, in whole or in part, by" Gomes--meaning that United Rentals' direct negligence is covered too.

Scottsdale's reading nearly eliminates the meaning of the phrase "for bodily injury" by reducing the coverage inquiry to whether the "liability" was "caused by" Gomes' acts or omissions. <u>See</u> <u>Thunder Basin Coal Co., L.L.C.</u> v. <u>Zurich Am. Ins. Co.</u>, 943 F. Supp. 2d 1010, 1014 (E.D. Mo. 2013). The phrase "in whole or in part" also resists Scottsdale's reading because, as a form of imputed liability, vicarious liability cannot be caused "in part." <u>See</u> <u>First Mercury Ins. Co.</u> v. <u>Shawmut Woodworking & Supply, Inc.</u>, 48 F. Supp. 3d 158, 173 (D. Conn. 2014). And nothing in the AI Endorsement expressly limits coverage to vicarious liability. <u>See</u> <u>WBI Energy Transmission, Inc.</u> v. <u>Colony Ins. Co.</u>, 56 F. Supp. 3d 1194, 1202 (D. Mont. 2014).

In short, the plain language of the AI Endorsement cannot support the limitation that Scottsdale now urges. And even if the language were ambiguous, Massachusetts law would favor extending coverage. See Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000) ("[A]ny ambiguities in the exclusion provision are strictly construed against the insurer."); Hazen Paper Co. v. U.S. Fidelity & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990). Thus, Scottsdale had a duty to indemnify United Rentals in the Ayotte Action for both its direct and vicarious liability.

Priority-of-Coverage Determination. Lastly, United Rentals appeals from the district court's March 30, 2018 ruling that the Scottsdale Policy's coverage was excess over United Rentals' own ACE CGL Policy. United Rentals argues that because both of its ACE Policies are forms of self-insurance, neither provides other "valid and collectible insurance" for the purposes of a priority-of-coverage determination. We agree and find that United Rentals has no other "valid and collectible" insurance, so that the Scottsdale Policy affords primary coverage here.

We already determined that Scottsdale has a duty to indemnify United Rentals as an additional insured for both direct and vicarious liability. However, the Scottsdale Policy explicitly states that additional insured coverage is "excess over any other valid and collectible insurance available to the

additional insured whether primary, excess, contingent, or on any other basis."  Applied here, the question is whether either of United Rentals' relevant policies--(A) the ACE Ultimate Net Loss Policy or (B) the ACE CGL Policy--qualify as "valid and collectible insurance."  This question boils down to whether United Rentals has "insurance."

The ACE Ultimate Net Loss Policy has a $2M self-insured retention ("SIR") and a $3M policy limit.  Under this policy, United Rentals is not entitled to any coverage from ACE until it pays the full $2M SIR, and once the SIR is paid, United Rentals is entitled to up to $3M of coverage.  So, does the SIR (as a form of self-insurance) qualify as insurance?

Black's defines "insurance" as "[a] contract by which one party (the insurer) undertakes to indemnify another party (the insured) against the risk of loss, damage, or liability arising from the occurrence of some specified contingency." Black's Law Dictionary (11th ed. 2019).  The Massachusetts Supreme Judicial Court ("SJC") has acknowledged that insurance involves "the shifting of risk from insured to insurer," in addition to risk-sharing among insureds. Liab. Investigative Fund Effort, Inc. v. Mass. Med. Prof'l Ins. Ass'n, 636 N.E.2d 1317, 1324 n.11 (Mass. 1994).  Conversely, "self-insurance" is a "plan under which a business maintains its own special fund to cover any loss." Black's Law Dictionary (11th ed. 2019).

Courts are split on the question of whether in the present context self-insurance is "insurance," but a clear majority has held that it is not. See Stratford Sch. Dist., S.A.U. No. 58 v. Emps. Reinsurance Corp., 162 F.3d 718, 721 (1st Cir. 1998). The First Circuit confronted a similar question regarding a policy with a $75,000 SIR in Stratford. There, interpreting New Hampshire law, this court held that a "retained self-insurance under a deductible, or in some analogous situation," does not constitute "'insurance' for the purposes of a separate policy's 'other insurance' clause." Id. at 720.

Drawing upon Black's definitions of insurance and self-insurance, the court wrote that "it seems obvious" that Stratford's "retention of responsibility to pay for claims against it below the limit of $75,000 was no 'insurance' at all" as its insurer "lacked any responsibility within the $75,000 limits." Id. at 720-21. Nothing in Stratford was specifically informed by New Hampshire law as opposed to general principles about how insurance functions.

As the SJC explained in Morrison v. Toys "R" Us, Inc., the "status of being 'self-insured' means the assumption of one's own risk, instead of transferring it to a third-party insurer by means of purchasing insurance coverage." 806 N.E.2d 388, 390 n.1 (Mass. 2004). "The term 'self-insured' is a manner of referring to a decision not to be insured by a third party . . . ." Id.

However, the SJC later stated in <u>Boston Gas Co.</u> v. <u>Century Indemnity Co.</u> that "[e]xcess . . . insurance over a qualified purely self-insured retention of risk would not be considered 'primary'; the self-insurance itself is the 'primary' layer. The excess policies [issued] in this case provided the first layer of excess coverage over Boston Gas's primary layer of self-insurance." 910 N.E.2d 290, 294 n.7 (Mass. 2009) (internal citation omitted). In our case, the district court concluded that this footnote meant that self-insurance is insurance.

The reasoning of <u>Stratford</u> governs here: the ACE Ultimate Net Loss Policy provides insurance coverage for claims above $2M, but the SIR itself does not provide insurance coverage because ACE has no obligation to pay any claim within the $2M limit. <u>Boston Gas</u> confirms <u>Stratford</u>'s approach of evaluating an SIR and a policy limit within a single policy as two separate layers of coverage. Moreover, <u>Boston Gas</u> stated that it was not concerned with a priority-of-coverage determination and was not interpreting an "other insurance" clause. The main point of footnote seven was that when an excess policy contains an SIR, the SIR must be exhausted before any coverage is triggered.

Law is to a large extent about words, their flexibility, malleability and abuse. George Orwell's classic essay <u>Politics and the English Language</u> is about politics and not law but more instructive (to law students of all ages) than any casebook. For

present purposes and in the context of our analysis, "insurance" is about risk shifting and "self-insurance"--a perfectly good phrase in other contexts--is the opposite of "insurance."

Turning to the ACE CGL Policy, that policy can be properly termed a "fronting" arrangement with a $2M policy limit and a $2M deductible. Under this arrangement, the first $2M of any loss must be paid by United Rentals, and once United Rentals has paid that first $2M, the $2M policy limit is considered exhausted. If United Rentals cannot pay the deductible, ACE has an obligation to pay damages of up to $2M to satisfy a judgment or settlement, and ACE always has the right, at its discretion, to pay damages on behalf of United Rentals. However, in either scenario, United Rentals must reimburse ACE for any sums paid out. So, is a fronting policy "valid and collectible insurance"?

This is a closer call than the SIR. Stratford is not a perfect analogy here because ACE does have some responsibility below the $2M policy limit--specifically in the case when United Rentals cannot pay its deductible. But the ACE CGL Policy is not, for practical purposes, an undertaking "to indemnify [United Rentals] against the risk of loss, damage, or liability"; in any scenario under which ACE would pay out under the policy, United Rentals would still be obligated to pay ACE back for any money spent.

Because United Rentals has no "other valid and collectible insurance," the Scottsdale Policy affords coverage to United Rentals here, and no further analysis of each policy's "other insurance" provision is needed.

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this decision.  Costs shall be taxed in favor of United Rentals.

**It is so ordered**.